ALICE NOURSE, administratrix, *vs.* ELLIS PACKARD.

Plymouth. Oct. 21, 1884. — Jan. 13, 1885. C. ALLEN & COLBURN, JJ., absent.

In an action for personal injuries occasioned to the plaintiff's intestate by the fall of a mill, there was evidence that the intestate was last seen alive in the mill ten or fifteen minutes before the accident; that, three quarters of an hour after the accident, his dead body was found about twenty feet below where he had been last seen, with no mark of injury upon it, surrounded by loose grain, and with five or six feet of grain over his head. There was also expert evidence that he died from suffocation, and that a person situated as he was would retain consciousness from three to five minutes. *Held,* that the jury would be warranted in finding that the death was not instantaneous.

In an action by an administratrix for personal injuries occasioned to her husband, who was killed by the falling of a part of the defendant's mill, which contained a large quantity of grain, there was evidence tending to show that the supports of the mill were defective and insufficient, and that this caused the fall. The mill was divided into several large bins for the storage of grain; and the defendant's evidence tended to show that he was not much about the mill, but that the intestate had the charge of it, directing and controlling the manner in which the grain should from time to time be received into the mill and

distributed in the different bins. The defendant asked the judge to instruct the jury, that, "if the jury find that the plaintiff's intestate had the sole charge and control of the placing and storing of grain in the defendant's mill and of the quantity to be taken into the same, and had the same knowledge, means of knowledge, and opportunity to examine the supports of the mill which the defendant had, and at the time of the accident he so loaded the mill as to quantity or distribution of the grain as to cause the accident, then he was not in the exercise of due care, and this action cannot be maintained." The judge refused to give this instruction; and, upon the subject embraced in it, instructed the jury that "the plaintiff must show further that her husband was at the time in the exercise of due and ordinary care, such as a prudent person may be expected to use under the same circumstances. If he was in the exercise of due and ordinary care, so far as that point is concerned, she is entitled to recover. If his own negligence or want of care contributed to the injury, then she cannot recover." *Held*, that the defendant had good ground of exception.

MORTON, C. J.  The plaintiff's intestate, Charles A. Nourse, was killed by the falling of a part of the defendant's mill, which contained a large quantity of grain.

It is a reasonable conclusion from the evidence, that he died from suffocation, and that he lived in a state of conscious suffering for a few minutes after the fall. The jury were therefore justified in finding that his death was not instantaneous.*

There was evidence tending to show that the supports of the mill were defective and insufficient, and that this caused the fall. The mill was divided into several large bins for the storage of grain; and the defendant's evidence tended to show that the defendant was not much about the mill, but that Nourse had the charge of it, directing and controlling the manner in which the grain should from time to time be received into the mill and distributed in the different bins.

The defendant asked the judge who presided at the trial to instruct the jury, that, " if the jury find that the plaintiff's intestate had the sole charge and control of the placing and storing

---

* The evidence bearing on this point was as follows: The plaintiff's intestate was last seen alive ten or fifteen minutes before the accident, shovelling grain in the second story of the mill. About forty-five minutes after the accident his dead body was found, about twenty feet below where he was last seen alive, surrounded by loose grain, and with five or six feet of loose grain above him. There were no marks of injury on his body. There was expert testimony to the effect that he died from suffocation, and that a person situated as he was would retain consciousness from three to five minutes.

of grain in the defendant's mill, and of the quantity to be taken into the same, and had the same knowledge, means of knowledge, and opportunity to examine the supports of the mill which the defendant had, and at the time of the accident he so loaded the mill as to quantity or distribution of the grain as to cause the accident, then he was not in the exercise of due care, and this action cannot be maintained." The judge refused to give this instruction; and, upon the subject embraced in it, merely instructed the jury that "the plaintiff must show further that her husband was at the time in the exercise of due and ordinary care, such as a prudent person may be expected to use under the same circumstances. If he was in the exercise of due and ordinary care, so far as that point is concerned, she is entitled to recover. If his own negligence or want of care contributed to the injury, then she cannot recover.".

The instruction requested, considered as a proposition applicable to every aspect of the case, may not be strictly correct. But there was one aspect of the case in which it ought to have been given. The plaintiff relied upon evidence showing that the defendant knew of the defective condition of the posts or supports of the mill, which caused the accident. The instruction was framed with reference to this evidence. If the jury found that he was negligent upon this ground, then the instruction requested was correct. For if the plaintiff had the same knowledge, and, being in sole charge of the distribution of the grain in the different bins, he purposely or thoughtlessly overloaded the bin supported by the defective post, the accident was caused by his negligence.

The defendant was fairly entitled to the substance of his requested instruction, if the jury took the view, which seems to be the view upon which the plaintiff relied, that the defendant knew the unsafe condition of the supports of the mill.

It is the duty of the court to give specific instructions when they are called for by the circumstances of the case. By the refusal to give the instruction requested, and by the failure to give any instructions upon the subject, the jury would or might be led to infer that the question of Nourse's knowledge of the condition of the supports was of no consequence, and their minds would be led away from the question to which the request was

directed, whether the accident was not caused by the fault of
Nourse in distributing the grain.   We think instructions should
have been given on this subject, and that the very general in-
structions which were given did not fully and fairly protect the
rights of the defendant.

We are therefore of opinion that there should be a new trial.

*Exceptions sustained.*

*B. W. Harris & C. W. Sumner,* for the defendant.
*E. L. Barney & H. L. Baker,* for the plaintiff.