KATE MULCHAHEY, administratrix, *vs.* WASHBURN CAR WHEEL COMPANY.

Worcester.   Oct. 5. — Nov. 23, 1887.   C. ALLEN & KNOWLTON, JJ.,
absent.

In an action for personal injuries occasioned to the plaintiff's intestate by the breaking of a machine upon which he was employed by the defendant, the evidence showed that the intestate was found, about ten minutes after the accident, with his body crushed and his bowels disrupted, and that, although breathing, he was unconscious, and died almost immediately in that state. The judge ruled that there was evidence to warrant the jury in finding that a cause of action accrued to the intestate in his lifetime, and survived to his personal representative; that there was no evidence to warrant the jury in finding that the deceased endured any conscious pain or suffering, and that the plaintiff was only entitled to recover nominal damages. *Held*, that the rulings were not inconsistent, and were correct.

TORT, for personal injuries sustained by the plaintiff's intestate, Richard Mulchahey, by the breaking of a piston rod of a

steam hammer which he was engaged in operating, while in the employ of the defendant. Trial in the Superior Court, before *Staples*, J., who reported the case for the determination of this court, in substance as follows:

The evidence showed that the hammer was a large and heavy machine with a " ram," so called, which was elevated by steam and which dropped together with the piston rod, which was attached to it, when the steam was allowed rapidly to escape.

The plaintiff's intestate worked upon a small platform half-way up the frame of the hammer, and about six feet from the ground, and managed the lever by which the steam was let off and on and the machine was worked ; another hand worked at the machine, handling the steel while hot, with appliances, under the hammer on an anvil, and determined the force of the blow, whether light or heavy, by directing the man at the lever. The steam cylinder was upright and over the frame of the hammer, and the accident was caused by the breaking of the piston rod in the " ram," so that when the steam was let into the cylinder the piston head and rod blew upward and out, struck the beam overhead, and fell to the ground, injuring the intestate.

The evidence tended to show that the intestate was struck by the falling rod. There was no witness to the occurrence who could give an exact account of the accident. The evidence of those who described it tended to show that, when the rod was blown out, the steam escaped into the building, which was a large shop open to the roof with the earth for a floor, filling all that part near the hammer with steam so that nothing could be seen for the time. The hands, including all who were near and who testified, ran out of doors at once, and returned as they found it safe to do so. The hand who worked with the deceased on the hammer ran out of one door, around the building, and in at another door opposite the boilers, and assisted in shutting the steam off. until which time it was escaping. The first persons who saw the deceased went to him after the steam had cleared away. The lapse of time up to this point was variously described by witnesses as follows : " as much as five minutes after the steam was shut off; " " about ten minutes after " (the noise of the blowing out).

The evidence also tended to show that the intestate was carried by some men into the office of the works, at the other end of the works and on the street, where he died in a few moments, without speaking or recognizing anybody.

The following is all the evidence from the witnesses as to what they observed of the injury and condition of the intestate.

The plaintiff testified as follows : " I saw him after he was hurt, lying in the office. He was then dead ; quashed in his body."

Annie Wood testified as follows : " I saw him on the counter in the office breathing his last. I saw the drooping and falling of the chin that always occurs in a person when dying, that I ever saw die ; he was just gasping. I went out before they would say he was dead, but it was evident from his appearance that he was dying."

Daniel Mulchahey testified as follows : " I just saw my brother breathing up and down in the office. I saw only one gasp, and turned away. I stood looking at them when they picked him up, and carried him to the office."

John Mulchahey testified as follows : " The steam had gone away when I went to the hammer. I saw him lying on the ground, lying down breathing. I put my head down and asked him if he knew me, and he made no answer. I did not help to take him in. I started back to the shop. I could not tell where he was struck. I observed a little cut on the temple. I did not see him again till he was dead. I understood his bowels were burst open. I stooped down and tried to speak to him ; there was no answer at all ; he was breathing, but very hard. He was puffing, a kind of gasp, as though he was in a death struggle. His body was burst, and his bowels were burst out."

James Clifford testified as follows : " When I got back after the accident, the steam was shut off. I helped to shut it off. I did not shut it off alone. I went right to the hammer, and I saw Mulchahey lying down. There was somebody there with him, and I believe had hold of his head. Then I looked right up to see if it had done any injury overhead, so the men would be safe, and when I came to look around again he was taken to the office. The only injury I saw at the time was the marks on his face, I will not be positive which side. I did not look at

him any length of time. He gave no signs of life when I looked at him."

William A. Eager testified as follows : " I saw some one lying under a broken shaft almost dead, and immediately I saw two or three persons carrying Richard Mulchahey in the front part of the mill office, when he died almost immediately in my presence. He had been struck by a piston, or steel shaft, while he was working in the company's works. I did see him while he was unconscious under the shaft, before any one could have approached him, and just the moment he had been struck by the piston. The limbs of the poor man were all bruised, and his bones were broken. Every one at the time was satisfied that the man had been killed by the piston or shaft while he was working."

Frank N. Olin, superintendent of the defendant's works, testified for the defendant as follows: "I heard an explosion of steam, — a noise. I got to the hammer about as quick as I could. I went to him, and took hold of his hands and spoke to him, and he seemed to be lifeless ; he made no move. I did not assist in carrying him into the office; observed a sort of gurgling in his throat. It must have been five or ten minutes before the body was taken up and carried in there. He did not bleed badly. He had a mark on his temple that bled a little. I did not look at his body ; he had his clothes on. I did not see blood flow out in front of the office. I stayed in the office when they put him in the ambulance. He was crushed in the body. He was struck on the head." .

Charles McFarland testified for the defendant as follows : " I was the first man to get to Mulchahey. I went over and took his hand. I noticed a cut on the side of his head. It was bleeding a little. I noticed no injury to any other part of the body. He had his clothes on, all but his cap. He laid side of the piston, probably two feet from it. I took hold of his hand and felt of his pulse, and found no pulse there. I went and lifted his head up, stooping down on one knee, put my hand under his head. I spoke to him and said, 'Don't you know me, Richard ? here's your wife, do you know me ?' He made no answer. His wife was not there ; I said that to attract his attention. I saw no motion, except a convulsive motion. His eyes were glassy and set. I stayed with him till he died."

At the conclusion of the evidence, the judge ruled that there was evidence to warrant the jury in finding that a cause of action accrued to the intestate in his lifetime, and survived to his personal representative ; that there was no evidence in the case to warrant the jury in finding that the intestate endured any conscious pain or suffering ; and that, upon the evidence, the plaintiff was only entitled to recover nominal damages, if the defendant was liable. The defendant, in view of this ruling, submitted to a verdict for nominal damages, the plaintiff excepting to the ruling as to damages. A verdict was accordingly returned for one dollar. If the ruling as to damages was correct, the verdict was to stand ; if not, a new trial was to be granted upon the whole case, inclusive of liability.

*W. S. B. Hopkins*, for the plaintiff.

*F. P. Goulding*, for the defendant.

DEVENS, J. As the report of the presiding judge deals only with the question of damages, the evidence tending to make a case of negligence on the part of the defendant, and to show that an action therefor accrued to the intestate in his lifetime, is not stated. It is assumed by the report, that it would be sufficient to sustain a verdict.

The plaintiff was justified in contending, upon the evidence, that the body of the deceased was not found until some ten minutes after the accident ; that, although then unconscious, he was still alive ; and therefore that his death was not instantaneous. The ruling of the presiding judge was in accordance with this contention ; but he further ruled that there was no evidence of conscious suffering by the intestate, and therefore that the plaintiff was entitled only to nominal damages. There was no evidence of any expenses or loss incurred before death by reason of the accident, which in itself might afford ground for substantial damages. *Bancroft* v. *Boston & Worcester Railroad*, 11 Allen, 34. The question is as to the correctness of the latter ruling.

The plaintiff deems these rulings inconsistent each with the other. We do not perceive the inconsistency. Instantaneous death and absence of conscious suffering after a fatal injury are readily distinguishable, and have been distinguished in our decisions. The continuance of life after the accident, and not

insensibility .or want of consciousness, is the test by which it is determined whether a cause of action survives. *Hollenbeck* v. *Berkshire Railroad*, 9 Cush. 478. But as the plaintiff can only recover such damages as she can show were sustained by her intestate, if he became instantly insensible, and so remained until his death, nothing can be recovered for any physical or mental suffering sustained by him. Nothing can be recovered by the administratrix on account of the death which subsequently ensued. *Bancroft* v. *Boston & Worcester Railroad*, *ubi supra*. In *Kennedy* v. *Standard Sugar Refinery*, 125 Mass. 90, where the intestate fell from a platform twenty feet in height, became unconscious on striking the ground, and, in one aspect of the evidence, remained so until his death, the plaintiff was allowed at the trial, by the judge at *nisi prius*, to recover for mental suffering endured during his fall. It was held in this court that the burden of proof was upon the plaintiff to show that her intestate actually endured mental suffering during the fall, before she could recover damages on that account; that, as no proof was furnished of any mental suffering during the fall, and as the question whether he did suffer mental terror or distress was purely a matter of conjecture, no damages could be recovered on that account. Whether the person injured endured conscious suffering has sometimes depended upon the question whether his death was instantaneous, but the two inquiries are distinct. *Corcoran* v. *Boston & Albany Railroad*, 133 Mass. 507. *Tully* v. *Fitchburg Railroad*, 134 Mass. 499. *Riley* v. *Connecticut River Railroad*, 135 Mass. 292.

That an adequate cause of the intestate's death, and one which must be held to have produced it, is found in the crushing of his body and disruption of his bowels, must be conceded. Viewed in the most favorable light for the plaintiff, this certainly fails to show any conscious pain or suffering on the part of the intestate. When found, although breathing, he was unconscious. Upon this state of facts, even if it were possible that there was some brief conscious suffering, evidence of it is not afforded, and it is left purely conjectural. The presiding judge did not undertake to say, as the plaintiff urges, that, because ten minutes after the accident the victim of it could not speak and was unconscious, he might not have passed into

that condition after brief but terrible suffering, but said, in substance, that the case did not afford evidence that he had suffered consciously. This was correct.

The plaintiff urges that the case at bar strongly resembles *Nourse* v. *Packard*, 138 Mass. 307; but the evidence here wanting was afforded in that case. The dead body of the intestate was there found under a heap of loose grain, and there was expert testimony that he died from suffocation, and that a person situated as he was would retain consciousness from three to five minutes. It was a reasonable conclusion that he lived in a state of conscious suffering for a few minutes after the fall of the grain upon him which caused his death.

*Judgment on the verdict.*