GEORGIANA M. PIERCE *vs.* CUNARD STEAMSHIP COMPANY.

Suffolk. November 17, 18, 1890. — January 10, 1891.

Present: FIELD, C. J., W. ALLEN, HOLMES, & MORTON, JJ.

*Personal Injuries — Negligence.*

In an action for personal injuries to the plaintiff's intestate, which ended in his being stifled by the smoke from a fire in the defendant's steamship, there was evidence that he was at work with others in a compartment between decks when the fire broke out there; that he delayed a little in trying to escape, seemingly to get something; that the other men ran up a movable ladder through a hatchway to the main deck; that as the last two or three men came up, the hatchway was nearly covered, and soon after was completely covered, by a tarpaulin, in obedience to an order to cover the hatches; that one of the men standing near to the officer who gave the order said, "No, there is a man there," and again, "It is a shame to cover the hatches and stifle the man"; that the officer replied, "I don't care a damn; cover the hatches"; that a fireman some time after the hatches were closed heard knocking in the compartment; and that, after the fire was put out, the intestate was found dead near the hatchway, with his coat wrapped about his head. *Held,* that the jury would be justified in returning a verdict against the defendant.

TORT, by the administratrix of the estate of Philip T. Pierce, to recover for personal injuries occasioned to the intestate, a carpenter, while employed by contractors in constructing, with the

defendant's permission, a refrigerator for exporters of beef on one of its steamships. Trial in the Superior Court, before *Thompson*, J., who ruled that there was no evidence to support a verdict for the plaintiff, and ordered a verdict for the defendant; and the plaintiff alleged exceptions, which appear in the opinion.

*G. H. Ryther*, for the plaintiff.

*G. Putnam & T. Russell*, for the defendant.

HOLMES, J.   This is an action for injuries to the plaintiff's intestate, Pierce, which, in fact, ended in his being stifled by the smoke from a fire on the defendant's steamship Cephalonia. The only question for us is whether the plaintiff was entitled to go to the jury. There was evidence tending to prove the following facts. The intestate was at work with others between decks when the fire broke out there. He delayed a little in trying to escape, seemingly in order to get his maul or his coat. The other men ran up a movable wooden ladder to the main deck. As the last two or three came up through the hatchway it was nearly covered with a tarpaulin, and shortly after it was completely covered, and the ladder removed, in obedience to an officer's order to close the ventilators and to cover the hatches. The jury might have found that this manifestly cut off the only practicable escape from between decks. One of the men who stood near the officer when he gave the order said, "No, there is a man there," and again, "It is a shame to cover the hatches and stifle the man." The officer replied, "I don't care a damn; cover the hatches." A fireman testified that he heard knocking in the compartment where the intestate was, a considerable time after the hatches were covered. After the fire was put out, the intestate was found dead near the hatchway, with his coat wrapped about his head.

We are far from saying that the story in this extreme form is the most probable account of what happened. It is no part of our business to express any opinion upon that. But it is an account which might have been elicited from the evidence, and might have been accepted. If accepted, it would warrant the inference that the intestate tried to escape, as was shown both by his knocking, and by his position when found, seemingly on his way to the foot of the ladder, and that he would have escaped but for the closing of the hatch. It would warrant the further

inference that the defendant's officer, when he ordered the hatch to be covered, believed that there was a man below whose escape would be cut off if the order was obeyed. It is enough for us to say, that, on the facts supposed, a jury would be justified in finding a verdict against the defendant in a civil action.

The evidence as to the progress which the fire had made when Pierce went back towards it is too vague for us to assume that it was negligent for him to do so. Whether it was so or not is a question for the jury. But if it was, that would not necessarily prevent the defendant's being held answerable in damages. No doubt, if the ground on which it was sought to charge the defendant was the original breaking out of the fire, it would be a good answer that the plaintiff needlessly and negligently exposed himself to it a second time, after having been once in a place of safety. *Hay* v. *Great Western Railway*, 37 Upper Canada, 456. But here the ground is not the fire, but an act done by the defendant after Pierce had got into the dangerous position. The nature of the act makes no difference. If the plaintiff's evidence is believed, it caused the suffocation, as truly as if the defendant had locked Pierce in first, and then set fire to the ship. The plaintiff's previous negligence is not a sufficient excuse for knowingly inflicting an injury upon him, or, short of that, for omitting the use of such care as is reasonable under the circumstances to avoid injuring him, even when the harm is not expected in terms. *Murphy* v. *Deane*, 101 Mass. 455, 465. *Hibbard* v. *Thompson*, 109 Mass. 286, 289. *Marble* v. *Ross*, 124 Mass. 44, 48. *Davies* v. *Mann*, 10 M. & W. 546. *Tuff* v. *Warman*, 5 C. B. (N. S.) 573, 585. *Radley* v. *London & North Western Railway*, 1 App. Cas. 754, 759. Shearman & Redfield, Negligence, (4th ed.) § 99.

If the plaintiff's case ultimately turns out to rest on the defendant's negligence, rather than on its having actually contemplated the infliction of harm upon Pierce, no doubt it will be proper for the jury to consider what grounds the officer had for believing that there was a man below, and the necessity which he was under of making up his mind at once, not merely upon that question, but upon the whole matter, and what was to be done. More than that, if they do not believe him to have acted with brutal indifference to human life, they will attribute such value as they may see fit to the judgment of the expert on the

spot upon the same question which they are now called on to decide as an appellate tribunal, and will bear in mind that the question is not what appears best now, in the light of the event and of subsequent knowledge, but what a reasonable and prudent man would have done then, under circumstances which they can only imperfectly reproduce. *Hawks* v. *Locke*, 139 Mass. 205, 209. But these considerations are for the jury, not for us.

The danger to the defendant's property, and perhaps to other lives, may be considered as adding to the stress under which its servant acted, but we by no means can assent to the proposition that this danger freed them from responsibility to Pierce for all conduct otherwise wrongful towards him, provided it tended to make the defendant safe. Even where a defendant's strait is such that he would escape criminal liability, it does not necessarily follow that he may not be held to make compensation for harm that he has done his neighbor's person or property knowingly, or with notice, or that he can shift his pecuniary losses on to the shoulders of others. *Miller* v. *Horton*, 152 Mass. 540, 547. We agree that the defendant did not act at its peril in closing the hatch, but it did act at the peril of a finding by a jury that it had notice that there was a man below, and did not use reasonable care to avoid smothering him.

There was evidence that, when the last men who escaped went up the ladder, the flames were upon them, and that there was no chance for any one later, so that covering the hatch made no difference to Pierce. There was evidence, also, that a sufficient time elapsed for any one who was able to escape to do so. But there was evidence to the contrary. The jury would have been warranted in finding that Pierce was following the other men, and was overwhelmed near the foot of the ladder; but they also would have been warranted in finding that he returned there somewhat later, and was only prevented from going up the ladder by finding it gone; or they might have found that closing the hatch caused him to be stifled before he quite reached the spot. In any view, they had a right to presume that he made all the efforts which he was able to do, and which occurred to him, in order to escape after he returned to the hatch.

From the situation in which Pierce's body was found, it may be inferred that his death was not instantaneous, and that he

lived in a state of conscious suffering for a greater or less time, even if that might not be presumed in most cases of death by suffocation. *Nourse* v. *Packard*, 138 Mass. 307. If that suffering was caused by the defendant's wrong, difficulty in estimating the damages is not a reason for its paying none.

*Exceptions sustained.*