Josiah C. Fuller, administrator, *vs.* Edith Andrew.

Plymouth.    December 4, 1917. — May 23, 1918.

Present: Rugg, C. J., Braley, Crosby, Pierce, & Carroll, JJ.

*Practice, Civil,* Report by judge. *Nuisance. Negligence,* Causing death, Matter of conjecture. *Tide Water. Wharf. Evidence,* Of conscious suffering, Matter of conjecture, Presumptions and burden of proof.

After a verdict has been returned for the plaintiff in an action at law and when a motion for a new trial is pending, if the presiding judge is of opinion that the verdict should be set aside solely because of excessive damages and is in doubt as to the status of the defendant's exceptions taken at the trial in case the verdict in its entirety is set aside solely for that reason, and if the questions of law that arose at the trial affect decisive issues as to liability, it is proper for the judge to report the case for determination by this court and he has power to do so without passing first on the motion for a new trial.

Where the owner of land on the seashore of an island in a harbor sold loam from the island to a contractor and agreed that the contractor might build a pile pier for the purpose of taking away the loam purchased by him, with the privilege of removing the pier, which, if not removed, was to become the property of the landowner, and where the contractor built such a pier extending into tide water, which was an obstruction to navigation, without obtaining any license from the harbor and land commissioners as required by R. L. c. 96, § 17, and, after having used the pier for shipping the loam purchased by him, did not remove the pier, which thereafter was in charge of an agent of the landowner although not used by the landowner, the structure so far as it extends into tide water is a public nuisance, and the landowner is liable under St. 1907, c. 375, for the death of a person in the exercise of due care caused by such obstruction to navigation.

In an action against the landowner maintaining the pile pier extending into tide water above described for causing the death by drowning of a person by reason of the collapse of a part of the pier when a motor boat in which such person was travelling was driven against and under the pier by force of the wind and waves, it appeared that the portion of the structure which fell on the motor boat was supported by piles driven by the loam contractor into the bed of the harbor below low water mark, where the soil belonged to the Commonwealth as the owner in fee, and it was *held*, that, the pier having been built with the knowledge and consent of the defendant as a single structure, it was intended to be used and had been used as a unit, of which all the parts were necessary elements, and that the whole of the pier must be treated as maintained by the defendant, upon whose land one end of it rested, it having been designed for use solely in connection with that land.

Distinction *pointed out* by RUGG, C. J., between a public and a private nuisance in regard to the requirement of a notice to abate the nuisance in order to create liability.

Evidence of the maintenance of a public nuisance in tide water in violation of the express terms of a penal statute and dangerous in fact to those members of the public lawfully navigating in the neighborhood is evidence of negligence under St. 1907, c. 375.

In the case above described it was *said* that, in addition to the fact of the maintenance of the public nuisance, there also was evidence in regard to the condition of weakness and want of repair into which the pier had been suffered to fall which tended to show lack of care.

In the case above described there was a count for the conscious suffering of the plaintiff's intestate, who was a woman. She last was seen alive in the cockpit of the motor boat when it came in contact with the pier and her body was found on the shore the next morning about a quarter of a mile from the pier. The medical examiner, who made an examination but performed no autopsy, found that drowning was the cause of her death. There was a discoloration of one eye and a bruise on the head which indicated a blow sufficiently severe to have caused unconsciousness instantaneously. No fracture of the skull was indicated. The medical examiner made no examination of the lungs to determine whether there was water in them. There was nothing to indicate whether the blow on the head came before or after the fall into the water. *Held*, that there was no evidence for the jury of conscious suffering, it being wholly a matter of surmise and conjecture whether there was such suffering or not.

In the case above described it appears to have been assumed that, in the absence of evidence in regard to the due care of the plaintiff's intestate, the intestate under St. 1914, c. 553, was presumed to have been "a person . . . in the exercise of due care" within the meaning of St. 1907, c. 375.

TORT, by the administrator of the estate of Ellen Hull Fuller, late of Quincy, for the death of the plaintiff's intestate on September 26, 1915, and the conscious suffering immediately preceding it, alleged to have been caused by the falling upon the intestate of a part of a wharf or pier alleged to have been maintained by the defendant in a defective and unsafe condition and to have been an unlawful structure maintained as a public nui-

sance at a point known as West Head on Peddocks Island in Boston Harbor, the first count of the declaration being under St. 1907, c. 375, and the second count being at common law for conscious suffering. Writ dated May 9, 1916.

In the Superior Court the case was tried before *Quinn*, J. The material evidence is described in the opinion. At the close of the evidence the judge denied motions of the defendant that a verdict be ordered in her favor both on the count for causing death and on the count for conscious suffering.

The defendant then asked the judge to make certain rulings, among which were the following:

"6. The defendant, as the owner of the land from which the wharf in question projected into the tide waters of the State, owed no duty to the plaintiff's intestate to see that the wharf was so constructed and maintained that it would not collapse when struck by a boat of which the plaintiff's intestate was an occupant.

"7. The fact that the wharf was built and allowed to remain standing without a license from the harbor and land commissioners, is not itself sufficient evidence of negligence on the part of the defendant to support a verdict in favor of the plaintiff, and unless the jury shall find that there is other evidence of negligence on the part of the defendant the verdict must be for the defendant.

"8. The fact that the wharf was built and allowed to remain standing without a license from the harbor and land commissioners is, at most, but some evidence of negligence on the part of the defendant, the effect of which evidence may be diminished or entirely rebutted by other evidence in the case."

"18. If the jury shall find that the wharf was erected by an independent contractor not employed by the defendant, and that such contractor built the wharf for his own purposes and failed to obtain a license from the harbor and land commissioners for the erection and maintenance of the wharf in the tide waters of the State, such failure on the part of the independent contractor is not evidence of negligence on the part of the defendant toward any person injured by a collapse of the wharf resulting from a collision between the boat of which such person was an occupant and the wharf."

The judge refused to make any of these rulings and submitted

the case to the jury with other instructions, which included the following:

"It appears to be undisputed from the testimony that there was no permit secured at the time it [the pier] was erected and no permit secured for its maintenance. . . . If any structure unauthorized in the nature of a pier or wharf be extended out into navigable waters and substantially interferes with navigation, the proper use of the water, and harm comes to one by reason thereof, you may be justified in concluding under the law of this Commonwealth that such a structure was a nuisance. And the matter of nuisance itself does not necessarily involve a question of negligence. . . . Having in view and thought all the uses of the sea and the natural conditions which may arise from changes in weather, in wind, and the results that may be probable, looking at it broadly and fairly, was this structure, this pier, an interference with travel on the sea? If it was in your judgment, you will conclude and you will be justified in concluding that it was a nuisance. . . . Here you may consider whether or not the presence of this pier in the stream had to do with this injury. If it was unlawfully placed there and you so conclude, did it contribute to bring about this accident? If it did, no matter how slight the part it contributed to the accident, and it is a nuisance and the persons injured were exercising due care, a defendant maintaining such a nuisance is liable for the injuries sustained."

At the close of the charge the defendant excepted "to such portions of the charge as in substance instructed the jury that if the wharf constituted a public nuisance and contributed to cause the death of the plaintiff's intestate while she was in the exercise of due care, the defendant is liable." She also excepted to a similar instruction as applied to the liability of the defendant for conscious suffering of the plaintiff's intestate.

The jury returned a verdict for the plaintiff in the sum of $10,348.33 for the death and $1,034.83 for conscious suffering.

The defendant filed a motion for a new trial on the ground that the verdict was against the evidence, against the weight of the evidence, and against the law, and that the damages awarded to the plaintiff on both counts of the declaration were excessive.

The judge, " being of opinion that the verdict should be set aside solely because of excessive damages" and being in doubt as to the

status of the defendant's exceptions taken at the trial if the verdict should be set aside in its entirety for that cause, reported the case for determination by this court of the questions of law raised. If the rulings of the judge at the trial were erroneous and harmful to the defendant, such order was to be made as this court might conclude to be proper. If his rulings were correct, the case was to be remanded to the Superior Court for final action on the motion for a new trial solely on the ground of excessive damages.

The plaintiff objected and excepted to the reporting of the case before disposing of the motion for a new trial, and the judge so stated in his report.

R. L. c. 96, § 17, is as follows:

"Section 17. Said board [of harbor and land commissioners] may license and prescribe the terms for the construction or extension of a wharf, pier, dam, sea wall, road, bridge or other structure, or for the filling of land or flats, or the driving of piles in tide water below high water mark, but not, except as to a structure authorized by law, beyond any established harbor line, nor, unless with the approval of the Governor and Council, beyond the line of riparian ownership. . . ."

R. L. c. 171, § 2, as amended by St. 1907, c. 375, is as follows:

"If a person or corporation by his or its negligence, or by the negligence of his or its agents or servants while engaged in his or its business, causes the death of a person who is in the exercise of due care and not in his or its employment or service, he or it shall be liable in damages in the sum of not less than five hundred nor more than ten thousand dollars to be assessed with reference to the degree of his or its culpability or of that of his or its agents or servants, to be recovered in an action of tort, commenced within two years after the injury which caused the death, by the executor or administrator of the deceased, one half thereof to the use of the widow and one half to the use of the children of the deceased; or, if there are no children, the whole to the use of the widow; or, if there is no widow, the whole to the use of the next of kin."

St. 1914, c. 553, is as follows:

"Section 1. In all actions, civil or criminal, to recover damages for injuries to the person or property or for causing the death of

a person, the person injured or killed shall be presumed to have been in the exercise of due care, and contributory negligence on his or her part shall be an affirmative defence to be set up in the answer of, and proved by the defendant.

"Section 2. All acts and parts of acts inconsistent herewith are hereby repealed.

"Section 3. This act shall take effect upon its passage, but shall apply only to actions or causes of action hereafter accruing."

*A. L. Stinson*, for the plaintiff, submitted a brief.

*G. K. Gardner*, for the defendant.

RUGG, C. J. This case comes before us by report, after a verdict but while a motion for a new trial is pending, the presiding judge stating that he is of opinion that the verdict should be set aside solely because of excessive damages. The questions of law presented by the report arose at the trial before the jury and affect decisive issues as to liability. Power to report exists under these circumstances. St. 1910, c. 555, § 5. *Smith* v. *Lincoln*, 198 Mass. 388, 392. *Strong* v. *Carver Cotton Gin Co.* 202 Mass. 209, 212. *Lee* v. *Blodget*, 214 Mass. 374. *Chertok* v. *Dix*, 222 Mass. 226, 228. *Edwards* v. *Willey*, 218 Mass. 363. *Weil* v. *Boston Elevated Railway*, 216 Mass. 545, 549; *S. C.* 218 Mass. 397, 401.

The plaintiff seeks to recover for the conscious suffering and death of his intestate. St. 1907, c. 375, § 1. On the morning of September 26, 1915, a party, of whom the plaintiff's intestate was one, embarked on a motor boat for a day on Boston harbor. The injuries to the deceased resulted from the collapse of a portion of a pile wharf when the boat was driven against and under it by the force of wind and wave during a heavy blow in the evening of that day. The wharf was a wooden pile structure about two hundred and fifty feet long, twenty feet wide, and at its outboard end about nineteen feet in height above mean low water. It projected from the shore of the defendant's land on Peddocks Island in Boston harbor. It was in the water below mean low water for about one hundred and forty feet, and it was a part of this portion which collapsed on the boat in question. It was built in 1909 by Thomas H. Gill and Company by virtue of an agreement with the defendant relating to the sale by her to them of loam from the island, whereby they were allowed to build the wharf with the privilege of removal, but, if not removed, it was to become the

property of the defendant. The wharf was used by Thomas H. Gill and Company for their purposes of loading loam, but was not removed by them. Their work ended in 1909. Thereafter the wharf was in charge of the agent of the defendant. There was evidence that neither the erection nor maintenance of the wharf had been licensed by the harbor and land commissioners, as required by R. L. c. 96, § 17.

The wharf might have been found to be an obstruction to navigation. *Attorney General* v. *Woods,* 108 Mass. 436. The absence of a license was sufficient evidence that the wharf was a public nuisance, and that any person who built or maintained the wharf, knowing that it was not licensed, would be liable in a civil action to a person injured, while in the exercise of due care, by collision with it. *Benson* v. *Malden & Melrose Gas Light Co.* 6 Allen, 149. *Fairbanks* v. *Kemp,* 226 Mass. 75. R. L. c. 96, § 25. The character of the wharf as a public nuisance, or the special injury suffered thereby by the intestate, cannot be controverted. It is argued in behalf of the defendant that since the portion of the wharf which fell was supported on piles driven into the bed of the harbor below low water mark by Thomas H. Gill and Company and not by herself, title to that portion of the structure vested immediately in the Commonwealth as the owner of the fee, *Commonwealth* v. *Boston Terminal Co.* 185 Mass. 281, 282, *Commonwealth* v. *Alger,* 7 Cush. 53, 65, and since she has not used the structure she cannot be held responsible for it in any sense. This contention cannot be supported. The wharf was erected with the knowledge and express consent of the defendant. There was a definite agreement between her and Thomas H. Gill and Company that, if the latter did not remove the wharf, title to it should vest in her. It was erected as a single structure. The nature and purpose of its construction required not only the part of it which was upon land of the defendant, but also that which was supported on piles driven below low water mark. While doubtless it would have been possible to remove that portion of the wharf resting upon the bed of the harbor in public ownership, its essential character and previous use demonstrates that it was a unit of which all its parts were necessary elements. One end of it rested upon her land. The manifest design of the whole structure was for use in connection with her land. It is somewhat similar to a build-

ing, a part of which is within the limits of a public way. The defendant does not appear to have made active use of the wharf. But her agent testified that he had charge of it after Thomas H. Gill and Company left it, that he had been on and round it a good many times, had examined the piles a number of times, and considered them sound. The inference was warranted from all the circumstances and testimony that the defendant took possession of the wharf and exercised control over and hence was responsible for it. *Rockport* v. *Rockport Granite Co.* 177 Mass. 246, 256.

The facts that the defendant did not construct the wharf and was not expressly notified to remove it as a nuisance do not exonerate her from liability as matter of law. There are expressions in decisions to the effect that one who continues a nuisance is liable as well as he who establishes it. *Staple* v. *Spring,* 10 Mass. 72, 74. *Hodges* v. *Hodges,* 5 Met. 205. *Fowle* v. *New Haven & Northampton Co.* 107 Mass. 352, 355. One who is not responsible for the creation of a private nuisance cannot be held liable for its subsequent maintenance merely because he has become the owner of it. It is the general rule that he must have notice to abate it, or knowledge that it is a nuisance and injurious to others, before he can be held liable for it. *McDonough* v. *Gilman,* 3 Allen, 264. *Nichols* v. *Boston,* 98 Mass. 39. But this is not the governing principle as to the maintenance of public nuisances. Ordinarily liability arises for maintaining structures which constitute or cause a public nuisance, whether built by the person charged or by some predecessor in title. This rule is well established, and the distinction between private and public nuisances as to the requirement of notice to abate is thoroughly imbedded in our jurisprudence. *Leahan* v. *Cochran,* 178 Mass. 566. *Hynes* v. *Brewer,* 194 Mass. 435, 439. The wharf being a public nuisance, the defendant may be held responsible, without notice to abate, if other elements of liability are made out.

The wharf was built by Thomas H. Gill and Company, resting partly upon land of the defendant and extending from her land into the waters of the harbor, by virtue of a contract with the defendant with the express stipulation that, if not removed by them, it should become her property and, pursuant to that arrangement, she took possession of it. These facts are sufficient to support the action against her, even though there was no

direct evidence of knowledge on her part that the wharf was erected without a license.

The plaintiff must show, in order to recover on the count for causing the death of his intestate, some evidence of culpable negligence on the part of the defendant. *Littlejohn* v. *Fitchburg Railroad,* 148 Mass. 478. *Boott Mills* v. *Boston & Maine Railroad,* 218 Mass. 582. But the maintenance of the wharf without a license, in violation of the terms of the statute, and thus constituting a public nuisance, afforded evidence of this nature. *Bourne* v. *Whitman,* 209 Mass. 155, 167. *Berdos* v. *Tremont & Suffolk Mills,* 209 Mass. 489, 496. *Gately* v. *Taylor,* 211 Mass. 60, 64. There was negligence on the part of the defendant in maintaining a public nuisance in tide water contrary to the express terms of a penal statute and dangerous in fact to those members of the public rightly navigating in the neighborhood. There was evidence tending to show lack of care in the state of weakness and want of repair into which the wharf had been suffered to fall, in violation of a legal duty, and that these factors had a causal connection with the injury to the plaintiff's intestate. That was enough to constitute negligence. *Bernabeo* v. *Kaulback,* 226 Mass. 128, 131.

The evidence as to the conscious suffering of the intestate was this: She last was seen alive standing in the cockpit of the boat when it came in contact with the wharf, and her body was found on the shore the next morning about one quarter of a mile distant from the wharf. The medical examiner made an examination, but performed no autopsy. He found drowning to be the cause of death. There was discoloration of one eye and a bruise on the head of adequate size and indicating a blow sufficiently severe to have caused unconsciousness, and, if unconsciousness were caused in that way, it probably would be instantaneous upon receiving the blow. So far as he could make out, there was no fracture of the skull. He made no examination of the lungs to determine whether there was water in them. A person comes to death by drowning in about two minutes, and unconsciousness would ensue in from one to two minutes. Under these circumstances there is nothing to indicate whether the blow on the head came before or after the fall into the water. Whether there was any conscious suffering or not was wholly a matter of surmise and conjecture. There was no evidence of such suffering. The burden

rested on the plaintiff to establish conscious suffering on the evidence. The case on this point is governed by *Corcoran* v. *Boston & Albany Railroad,* 133 Mass. 507, *Riley* v. *Connecticut River Railroad,* 135 Mass. 292, *Mulchahey* v. *Washburn Car Wheel Co.* 145 Mass. 281, and is distinguishable from *Nourse* v. *Packard,* 138 Mass. 307, *Pierce* v. *Cunard Steamship Co.* 153 Mass. 87, and *Boutlier* v. *Malden,* 226 Mass. 479, 487, 488.

A verdict should have been ordered for the defendant on the count for conscious suffering, and that entry may be made.

The other rulings of the Superior Court were correct. The cause is to be remanded to the Superior Court on the death count for final action on the motion for a new trial on the ground of excessive damages, this being in accordance with the terms of the report.

*So ordered.*