ROYAL INDEMNITY COMPANY *vs.* PITTSFIELD ELECTRIC COMPANY.

Berkshire.   September 17, 1935. — December 14, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Negligence*, In use of electricity, Contributory, Licensee. *License. Evidence*, Of conscious suffering.

On all the evidence, a finding was warranted that an electric company maintaining, under an easement but not an exclusive right to any land, an insulated wire carrying a dangerous current of electricity high above the ground across a house lot was guilty of negligence causing the death by electric shock of a radio repairman which occurred while he was in a tree on neighboring land, as a licensee of the neighbor, attempting to lift from the wire a radio antenna which had been strung from the house to the tree at right angles to and a few feet above the wire, and which had sagged onto the wire at a place where the insulation had worn off; and a ruling was not required that the repairman was guilty of negligence contributing to his death.

The fact that a radio antenna strung from a house to a tree upon a neighbor's land had been maintained thus for six months without objection by the neighbor warranted a finding that a radio repairman, while

in the tree working on the antenna at the request of the owner of the house and the antenna, was a licensee of the neighbor.

A finding that one killed by a severe electric shock lived or suffered consciously after the shock was not warranted on evidence that he emitted "a scream," or "two cries" about a second apart.

TORT. Writ dated May 1, 1931.

The action was tried in the Superior Court before *F. T. Hammond*, J., who ordered a verdict for the defendant. The plaintiff alleged an exception.

*E. J. Sullivan*, for the plaintiff.

*J. M. Rosenthal*, for the defendant.

LUMMUS, J. The plaintiff, the insurer of The Meyer Store, Incorporated, under the workmen's compensation act, having paid compensation for the death of an employee of the latter named Francis Bruce, brings this action by virtue of G. L. (Ter. Ed.) c. 152, § 15, to recover for the conscious suffering and death of Bruce. The only exception is to the direction of a verdict for the defendant.

There was evidence tending to prove the following facts. The Meyer Store, Incorporated, sold, installed and repaired radio receiving sets, commonly called "radios." One Bloomberg, who owned a house on the south side of Spadina Parkway had asked The Meyer Store, Incorporated, to repair an antenna, connected with such a set, which ran southerly from the Bloomberg house at a height of more than thirty feet above the ground to an elm tree on the land of a neighbor to the south, and which was put up in November, 1929. Running across the Bloomberg lot from east to west, at right angles to the antenna and about three feet below it, were insulated primary electric light wires carrying twenty-three hundred volts of high amperage, which were there before the antenna was put up, and which the defendant had an easement to maintain. The Meyer Store, Incorporated, on the morning of May 16, 1930, sent its servant, Bruce, to repair the antenna. He found that it was lying on one of the electric light wires. He took a ladder and a piece of wire, and climbed into the tree. It turned out that the insulation of one of the electric light wires had worn off near the place where the

antenna rested on it.   Bruce untied the antenna, fastened his piece of wire to it to lengthen it, and tried to lift it from the electric light wire.   In so doing, he received a shock which killed him.

It could not have been ruled as matter of law that Bruce was shown to be guilty of contributory negligence.   He was not an electrician.   The fact that the insulation was worn off could not readily be seen from below.   It does not appear that he knew that the resting of the antenna upon the electric light wire had previously produced flashes of electricity.   There was evidence that if the insulation had been sound what he was doing would not have been unsafe.   *Griffin* v. *United Electric Light Co.* 164 Mass. 492. *McCrea* v. *Beverly Gas & Electric Co.* 216 Mass. 495.   *Jordan* v. *Malden Electric Co.* 244 Mass. 342.   The case is unlike *Pina* v. *Cape & Vineyard Electric Co.* 289 Mass. 85.

The main question is whether there was evidence of negligence on the part of the defendant.   "There can be no negligence without some act or omission in violation of a legal duty."   *Goodwin* v. *E. B. Nelson Grocery Co.* 239 Mass. 232, 234.   *Forance* v. *Bigelow Hartford Carpet Co.* 257 Mass. 507.   *Karlowski* v. *Kissock,* 275 Mass. 180, 183.   The wires in question were so high above the ground that under ordinary conditions little watchfulness was required to insure the safety of persons using the Bloomberg lot.   *Hector* v. *Boston Electric Light Co.* 161 Mass. 558, 568; 174 Mass. 212, 215.   But the defendant is not shown to have had any exclusive right to any land, and was bound to anticipate that the land would be used by Bloomberg and others. The antenna had been strung above the electric light wires about six months before the accident.   It could be found that the defendant, in the exercise of reasonable care, should have known that the antenna was close to the electric light wire, and that someone might work on it.   There was evidence that the insulation appeared to be worn off as well as burned by electricity.   Although there was evidence that no insulation of such wires, unless too thick and heavy to be practicable, could be relied on, there was evidence to the contrary, that if the insulation had been intact "the bare

antenna wire could be lifted off the electric wire without the person raising the antenna receiving any shock." Bloomberg testified that on the evening before the accident he called the defendant on the telephone and "told them that there seemed to be something the trouble with his aerial, and it seemed to be touching some wires, and there were flashes coming from wires in the rear of his house." See *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340, 343. It could be found that the defendant had notice which imposed upon it a duty to all persons who might lawfully be within the range of danger, to guard against the danger sooner than it did. *Lutolf* v. *United Electric Light Co.* 184 Mass. 53. *Linton* v. *Weymouth Light & Power Co.* 188 Mass. 276. *Prince* v. *Lowell Electric Light Corp.* 201 Mass. 276. *McCrea* v. *Beverly Gas & Electric Co.* 216 Mass. 495. *Romana* v. *Boston Elevated Railway*, 218 Mass. 76. *Philbin* v. *Marlborough Electric Co.* 218 Mass. 394.

It is immaterial that at the moment of his injury and death Bruce was not on the Bloomberg lot, but on the land of a neighbor. It does not appear that he was a trespasser there. On the contrary, the facts that the antenna had remained fastened to the tree for six months, and that there was no evidence of any objection, warranted a finding that in working upon the antenna Bruce was a licensee of the neighbor. He was not a trespasser as to any rights of the defendant. *Sarna* v. *American Bosch Magneto Corp.* 290 Mass. 340, 344–345. See also *Philbin* v. *Marlborough Electric Co.* 218 Mass. 394. He was engaged rather in correcting what might be deemed an interference with the defendant's easement. His position was unlike that of the plaintiff in *Falardeau* v. *Malden & Melrose Gas Light Co.* 275 Mass. 196. The plaintiff was entitled to go to the jury on the first count, for negligently causing death, under G. L. (Ter. Ed.) c. 229, § 5.

The remaining question is, whether there was evidence of a cause of action accruing to Bruce in his lifetime, which survived under G. L. (Ter. Ed.) c. 230, § 1; c. 228, § 1. See *Treasurer & Receiver General* v. *Sheehan*, 288 Mass. 468.

Continuance of life after a personal injury, though not continuance of consciousness, is necessary to the existence and survival of a cause of action for the injury; but to permit the assessment of damages for bodily mutilation or physical or mental suffering there must have been pain or at least consciousness of injury. *Hollenbeck* v. *Berkshire Railroad,* 9 Cush. 478. *Tully* v. *Fitchburg Railroad,* 134 Mass. 499, 504, 505. *Mulchahey* v. *Washburn Car Wheel Co.* 145 Mass. 281. *Battany* v. *Wall,* 232 Mass. 138. The burden of proof in these matters is on the plaintiff. *Fuller* v. *Andrew,* 230 Mass. 139, 147, 148.

A very brief period of life between injury and death will enable the cause of action to accrue and therefore to survive, and will give time for conscious suffering for which damages may be assessed. *Bancroft* v. *Boston & Worcester Railroad,* 11 Allen, 34, 35. *Tully* v. *Fitchburg Railroad,* 134 Mass. 499, 504. *Nourse* v. *Packard,* 138 Mass. 307. *Pierce* v. *Cunard Steamship Co.* 153 Mass. 87. *Knight* v. *Overman Wheel Co.* 174 Mass. 455, 463. *Isaacson* v. *Boston, Worcester & New York Street Railway,* 278 Mass. 378, 391, 392. In *Boutlier* v. *Malden,* 226 Mass. 479, 487, 488, and *Nadeau* v. *Taunton,* 247 Mass. 104, persons injured by electric shock showed signs of conscious suffering for a short time before dying. In *Brosnan* v. *Gage,* 240 Mass. 113, a drowning boy struggled for a minute or two before sinking. In *Martin* v. *Boston & Maine Railroad,* 175 Mass. 502, where a man was pushed along the ground by a train for half a minute before being run over and killed, it was held that an absence of conscious suffering could not be found. It has even been conceded that conscious suffering is possible during a fall from a height of twenty feet. *Kennedy* v. *Standard Sugar Refinery,* 125 Mass. 90, 92. *Mulchahey* v. *Washburn Car Wheel Co.* 145 Mass. 281, 286. See also *Western & Atlantic Railroad* v. *Roberson,* 61 Fed. Rep. 592, 601; *Kellow* v. *Central Iowa Railway,* 68 Iowa, 470, 481, 482. This court has never adopted the doctrine that a dying man can acquire no right to damages for the suffering which is incidental to his death. *The Corsair,* 145 U. S. 335, 348. *St. Louis, Iron Mountain & Southern*

*Railway* v. *Craft*, 237 U. S. 648, 655. *Great Northern Railway* v. *Capital Trust Co.* 242 U. S. 144.

In the present case, the evidence was that two women, in neighboring houses, heard "a piercing sound" or "a scream," or, as one testified, "two cries," about a second apart. Several minutes later both came out. All was still, no children or other persons were about, and the body of Bruce was in the tree. We think that it could be found that the sound came from Bruce. But we do not think that common knowledge would enable a jury to say (*Crowley's Case*, 287 Mass. 367, 375, 376) that the sound indicated the continuance of life or conscious suffering, rather than the mechanical expulsion of air by spasmodic muscular contraction caused by the shock. See *Kearney* v. *Boston & Worcester Railroad*, 9 Cush. 108, 110; *Mears* v. *Boston & Maine Railroad*, 163 Mass. 150. The verdict for the defendant was rightly directed as to the second count.

The result is, that the exceptions are sustained, and a new trial is to be had on the first count only.

*So ordered.*