EMMA MAYNARD *vs.* THE CAREY CONSTRUCTION COMPANY.

Bristol.   October 24, 1938. — April 10, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Nuisance.*

A dump on which noxious cockroaches lived and spread to nearby dwelling houses each summer could be found to be a nuisance.

A landowner, who gave a proper person a license to use his land as a dump, with full actual control in the licensee, at a time when the dump was in no way a nuisance, was not liable for an unforeseeable nuisance thereafter arising from the dump, if, after learning of its existence, he used all reasonable means within his power to abate it.

BILL IN EQUITY against the city of Fall River and The Carey Construction Company, filed in the Superior Court on February 6, 1933, with a writ of summons and attachment dated November 16, 1932, and afterwards amended.

By consent of the plaintiff, the bill was dismissed as against the defendant city.   An interlocutory decree confirming the master's report and a final decree dismissing the bill as against the defendant The Carey Construction Company were entered by order of *Sheehan*, J.   The plaintiff appealed.

*L. Shabshelowitz*, for the plaintiff, submitted a brief.

*J. B. Cummings*, for the defendant.

QUA, J.   This suit, originally brought against the city of Fall River as well as The Carey Construction Company for injunctive relief against an alleged nuisance and also for damages, is now, after the cessation of the nuisance, prosecuted against the construction company alone for the recovery of damages.

The defendant is the owner of an abandoned quarry "of considerable area and great depth," located in a sparsely settled section near the boundary of the built-up portion of the city.   Prior to 1927 this quarry had been used as a dump.   In 1927 the defendant gave the city's superintend-

ent of streets permission to continue the use of the premises as a dump, and thereafter, until such use ceased in August, 1933, the officers of the city were in exclusive control and had exclusive use and "full charge" of the dump.   Notwithstanding the city's actual exclusive control there seems to have been no lease, and we assume that the relation between the defendant and the city was merely that of licensor and licensee.   We deal with the case on that basis.

As early as the summer of 1928 the dump had become infested with a species of cockroach not native to this section but larger and more active than the native cockroach and having the power of flying as well as of crawling. These insects were active during the warm summer months, and at those times they spread over the adjoining land and into the yards and houses owned by the plaintiff in the vicinity of the dump.   In increasing degree each year they became a source of discomfort to the plaintiff's tenants and adversely affected the rental value of her property, causing her damage.

From the foregoing and other findings of the master there would seem to be little difficulty in reaching a conclusion that the dump, considered merely as the breeding place of a noxious pest, was sufficiently harmful to the plaintiff and lacking in reasonable justification from the standpoint of the defendant to fall within the category of a nuisance.   *Stevens* v. *Rockport Granite Co.* 216 Mass. 486. *Cumberland Corp.* v. *Metropoulos*, 241 Mass. 491.   *Tortorella* v. *H. Traiser & Co. Inc.* 284 Mass. 497.   *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24.

But there remains the question whether the defendant is legally responsible for the creation or maintenance of such nuisance.   Upon this branch of the case further findings of the master become material.   The dump was properly located and was efficiently supervised and cared for.   As a dump (i.e. aside from cockroaches) it was not injurious to the plaintiff's property.   There were no cockroaches there when the defendant gave the city permission to use it. "None of the other city dumps were affected by these pests

and how this particular dump came to be infested with them, whether from material thrown on the dump by the street department or from matter thrown on it by unauthorized persons, is purely a matter of conjecture. It is apparent that the coming of these pests to this dump could not have been foreseen and that once the dump became infested with them, the problem of controlling them and stamping them out was a very difficult one." "The appearance of the pests upon the defendant's premises could not by any reasonable possibility have been foreseen or guarded against." The defendant had no knowledge of the existence of a nuisance until it received a letter from the plaintiff dated November 2, 1932. That was at a season when the cockroaches were inactive. The city, however, had been aware of their existence from complaints of the plaintiff and her tenants as early as 1928, and through its street department and board of health had made persistent efforts to stamp them out by the use of insecticides and poisons under the advice of the United States department of agriculture. Various expedients were tried without success. In the summer of 1933 the city was still endeavoring to get rid of the pests. Bids were invited and received for that purpose, but none was accepted, and on August 4, 1933, the city discontinued the use of the dump, and the board of health notified the defendant that further dumping must cease. The defendant immediately barred all approaches and posted "No Trespassing" signs, and all dumping was at an end. In the summer of 1934 the dump was completely filled in with earth as a Federal emergency project. For some time prior to the closing of the dump in August, 1933, the defendant "had been coöperating" with the city in the attempt to find a remedy. After the closing it "exercised due diligence." It coöperated with the city in the filling of the dump in 1934, by which the nuisance was finally eliminated. "There was no element of unreasonableness in the use of the pest-infested area." The defendant was not negligent.

These findings show that the plague of cockroaches was not a natural consequence of the permission by the defend-

ant to the city to use the quarry as a dump. It was an extraordinary misfortune, outside the course of experience, which the defendant could not anticipate and which occurred entirely without fault on its part. The dump without the cockroaches was not a nuisance. For the reasons stated it cannot be held that the defendant created the nuisance.

The rule seems to be established that a landowner is not liable, merely because he holds the title, for the consequences of a private nuisance which he did not create, unless he suffers it to continue after notice to abate it or at least after knowledge of its existence. *McDonough* v. *Gilman*, 3 Allen, 264. *Nichols* v. *Boston*, 98 Mass. 39, 43. *Prentiss* v. *Wood*, 132 Mass. 486, 488. *New Salem* v. *Eagle Mill Co.* 138 Mass. 8. *Hogan* v. *Barry*, 143 Mass. 538, 540. *Leahan* v. *Cochran*, 178 Mass. 566, 569. *Fuller* v. *Andrew*, 230 Mass. 139, 146. The law is different as to a public nuisance. *Fuller* v. *Andrew, supra.* We see no reason why the rule just stated should not apply to a case like this, where an unforeseeable private nuisance arose without the owner's fault or knowledge, after full actual control of the dump had been given to a proper licensee. *Pettibone* v. *Burton*, 20 Vt. 302, 308, 309. *McMechen* v. *Hitchman-Glendale Consolidated Coal Co.* 88 W. Va. 633, 636. See *Lufkin* v. *Zane*, 157 Mass. 117, 121–122; *Moret* v. *George A. Fuller Co.* 195 Mass. 118, 123; *Walter* v. *County Commissioners*, 35 Md. 385, 392; *Bernard* v. *Whitefield Tanning Co.* 78 N. H. 418, 422. Compare *Dalay* v. *Savage*, 145 Mass. 38; *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47, 49; *Anderson* v. *Kopelman*, 279 Mass. 140, 146; *Spiker* v. *Eikenberry*, 135 Iowa, 79; *White* v. *Jameson*, L. R. 18 Eq. 303.

But after the notice it became the duty of the defendant, as a licensing owner who could resume control at will, to use all reasonable means within its power to abate the nuisance. *Rockport* v. *Rockport Granite Co.* 177 Mass. 246. See *Gray* v. *Boston Gas Light Co.* 114 Mass. 149, 153; *Ainsworth* v. *Lakin*, 180 Mass. 397, 401–402; *Hunt* v. *Lane Brothers Co.* 294 Mass. 582, 587. There is, however, noth-

ing to show that the defendant was remiss in the performance of this duty. When the defendant learned of the nuisance, efforts to abate it were already under way in presumably competent hands. The defendant coöperated in these efforts and in the eventual filling of the quarry with earth. It does not appear that immediate closing of the dump would have eliminated the cockroaches. The defendant was not bound to fill the whole quarry with earth before trying other methods which held out a reasonable prospect of success, even if it was practicable to fill the quarry without government help. The defendant was entitled to reasonable time in which to correct the trouble. The findings are insufficient to charge the defendant with liability for the period after it had notice and before the filling of the quarry. *Mahoney* v. *Libbey,* 123 Mass. 20. *Ainsworth* v. *Lakin,* 180 Mass. 397, 401–402. *Green* v. *Nightingale,* 211 Mass. 273, 276. *Hogle* v. *H. H. Franklin Manuf. Co.* 199 N. Y. 388. *Beauchamp* v. *Excelsior Brick Co.* 143 App. Div. (N. Y.) 48. The record supplies no basis upon which we can add to or qualify the master's findings on this or on any other aspect of the case.

There was no error in overruling the plaintiff's exceptions to the master's report.

*Interlocutory order and decree affirmed.*
*Final decree affirmed with costs.*