Pettibone *v.* Burton et al.

---

--»»-●◉◉--»«●--

JOHN S. PETTIBONE *v.* JOSIAH BURTON AND MAJOR HAWLEY.

Where there are divers acts concurrent to make a conveyance of an estate, the original act is to be preferred, and to this the other acts will have relation;—but this relation by fiction will not have place, where it will prejudice the rights of third persons, who are neither parties or privies to the conveyance. BEN-NETT, J.

But where the purchaser of land permits a third person, who was in possession at the time of the purchase, to retain the exclusive possession of the land, no rent being paid, or claimed, the purchaser will not be liable for the act of such third person, in subsequently building a dam upon the land, without the knowledge of such purchaser, whereby injury is occasioned to the premises of an adjacent land owner.

TRESPASS ON THE CASE for erecting a dam upon the defendants' land, whereby the water was caused to overflow and injure the plaintiff's land adjacent. Plea, the general issue, and trial by jury, June Term, 1847,—KELLOGG, J., presiding.

On trial the plaintiff gave in evidence a lease from Samuel Pettibone to Jonathan Gilbert, dated January 3, 1800, conveying the right to erect a dam; also several *mesne* conveyances from Jonathan Gilbert to Eli Gilbert; also a deed from Eli Gilbert to William Purdy, dated March 18, 1822, conveying two thirds of the premises; also a license from the probate court to Curtis Burton, administrator of William Purdy, dated May 31, 1843, authorizing him to sell the real estate of his intestate; also a return, made by the administrator to the probate court, dated June 26, 1843, stating that he had sold, June 24, 1843, a portion of the premises in question to the defendant Burton, for $185,00, and a portion to the defendant Hawley for $95,00; also the administrator's account, as allowed by the probate court, showing that he charged himself with $143,00 for real estate sold July 9, 1843; also a deed from the administrator to the defendants, dated January 15, 1844, conveying, among other parcels of real estate, the premises upon which the dam complained of was erected, and reciting that the premises were sold to the defendants June 24 and July 9, 1843;—but it was proved, that this deed was in fact executed, acknowledged and delivered February 15, 1844.

The plaintiff also introduced evidence tending to prove, that one *Mills Purdy*, together with the administrator of William Purdy and the neighbors, in June, 1844, erected the dam in question; and that this dam caused the water to overflow the plaintiff's land to a greater extent, than it had been overflowed by reason of a dam previously erected upon the premises by Jonathan Gilbert, and which had been continued by the several owners until the death of William Purdy, in 1842. There was no testimony tending to prove, that either of the defendants ever took possession or had any control of the premises, or that they knew of the erection of the dam, or of the rise of water thereby occasioned, or that they paid to the administrator any part of the consideration for the purchase of the premises until the execution of the deed to them, February 15, 1845. It was admitted, that the plaintiff was the owner of the land alleged to have been overflowed.

The defendants then introduced evidence, which was not contradicted by testimony on the part of the plaintiff, and which tended to prove, that the dam, which was erected in June, 1844, was wholly

carried away in January, 1845; that the said Mills Purdy had exclusive possession of the dam and premises during the summer and autumn of 1844; and that in December, 1844, Mills Purdy left the premises, and they remained unoccupied until the spring of 1845. The defendants also gave in evidence a deed from themselves to Betsey Purdy, dated February 25, 1845, conveying all the premises conveyed to them by the administrator's deed, and proved, that the dam was not again erected, until after the execution of their deed to Betsey Purdy. The defendants also proved, that no part of the consideration for the purchase of the premises had been paid by them to the administrator, until after the dam had been carried away, as above mentioned, nor until the execution and delivery of the deed to them, February 15, 1845.

The court instructed the jury, *pro forma*, that if they should find, that the water overflowed the plaintiff's land more, by reason of the dam erected in 1844, than it had previously done, the plaintiff was entitled to recover such damage, as he had sustained thereby. Verdict for plaintiff. Exceptions by defendants.

*Miner & Burton* for defendants.

The defendants had no agency in erecting the dam, and no occupancy of the premises during its continuance, and they knew nothing of any rise of water, whereby the plaintiff suffered damage. Hence they can only be made liable, by showing that the legal title was in them at the time. But the deed from the administrator of William Purdy to the defendants was not executed and delivered, until after the dam was carried away. A deed takes effect from its delivery. 4 Kent 454. 1 Sw. Dig. 153. *Fish* v. *Gordon*, 10 Vt. 288. *Harrington et al.* v. *Gage et al.*, 6 Vt. 532. *Ladd* v. *Ladd*, 14 Vt. 185. *Eames* v. *Phipps*, 12 Johns. 418. *Hardenberg et al.* v. *Schoonmaker*, 2 Johns 230. *Fairbanks* v. *Metcalf*, 8 Mass. 230. The delivery of a deed sometimes has relation back to the time of the contract, or of the execution, if the actual delivery were of a subsequent date; but this is never allowed, except in cases of strict necessity, so that intervening events shall not prevent its full operation. *Ladd* v. *Ladd*, 14 Vt. 185. *Ruggles* v. *Lawson*, 13 Johns. 285. *Hinman et al.* v. *Booth*, 21 Wend. 267. *Jackson* v. *Rowland*, 6 Ib. 666. *Gratz et al.* v. *Catlin*, 2 Johns. 248. *Frost et al.*

Pettibone v. Burton et al.

v. *Beekman*, 1 Johns. Ch. R. 288. The defendants had never paid any thing towards the purchase, and the deed was not executed, until February 15, 1845, when the dam was away. We think no case can be found, where a deed has been decided to have relation back to a time anterior to its delivery, for any purpose, unless the deed had either been executed, or some consideration had been paid for the premises, or the grantee had gone into actual possession under the contract. Neither can a case be found, we believe, where a deed has been decided to relate back to the purchase, when a deed was executed, unless it was to save the rights of the *purchaser*. 1 Johns. Cas. 85. *Johnson* v. *Stagg*, 2 Johns. 510. *Heath* v. *Ross*, 12 Johns. 140. 18 Vin. 289. *Jackson* v. *Dickinson*, 15 Johns. 209. In *Stevens* v. *Watkins*, decided in this county and not reported, a deed was held to relate back, to prevent its being void under the statute, there being an adverse possession at the time it was delivered. When a deed relates back, to save the title in the purchaser, it does not for all purposes, and never so as to make the purchaser liable for wrongs committed by the vendor, or by strangers, to which the purchaser was not accessory. 18 Vin. 291. *Frost et al.* v. *Beekman*, 1 Johns. Ch. R. 288. The doctrine of relation is a legal fiction; and courts will not resort to fictions in law, if innocent persons are thereby made to suffer. *Johnson et al.* v. *Smith*, 2 Burr. 950. 4 Kent 454.*

*J. S. Robinson* for plaintiff.

To determine whether the defendants are liable for the injury sustained by the plaintiff, it must be ascertained when their title first accrued,—whether from the sale, or from the execution and delivery of the deed. In Hammond's N. P., 163, it is laid down, that the title of a purchaser accrues from the conclusion of the contract. Therefore the title of the defendants accrued on the 24th of June, 1843; and this consequence results from the doctrine of *relation*. That doctrine is this, "Where there are diverse acts concurrent to make a conveyance of estate, or other thing, the original act shall

---

*Other points were also made by the counsel for the defendants, and particularly in reference to the sufficiency of the probate proceedings;—but as they were not decided by the court, they need not be noticed here.

be preferred, and to this the other acts shall have relation." Vin. Ab., Relation, 290. The doctrine of relation, as understood by Viner, does not come within the definition of *fictio juris*,—which the elementary writers define to be a legal assumption of a thing, which is either not true, or which is as probably false as true. Broom's Leg. Maxims 28. This doctrine, therefore, when applied to this case, is analogous in its spirit and intent to the maxim in equity, that what is effectually contracted to be done is to be considered as done. Sugd. on Vend. 131. If a purchaser were to execute a deed, or mortgage, before the vendor conveyed to him, it would be sustained in a court of law by the doctrine of relation. *Jackson* v. *Raymond*, 1 Johns. Cas. 85. *Johnson* v. *Stagg*, 2 Johns. 510. *Beekman* v. *Frost*, 18 Johns. 544. On the other hand, in those states where a judgment is a lien upon real estate, after the levy the title of the creditor relates back to the time of judgment, so as to cut out intermediate incumbrances. 2 Wheat. 396. 6 U. S. Cond. R. 604, n. In *Millcman* v. *Stephens*, Bennington Co. Sup. Ct., 1833, (not reported,) it was decided, that a deed, executed in pursuance of a contract for the purchase of an estate, was not void by reason of an adverse possession between the sale and the execution of the deed. *Jackson* v. *McMichael*, 3 Cow. 75. *Jackson* v. *Dickinson*, 15 Johns. 309. 4 Kent 140, 431. The case of *Jackson* v. *Catlin*, 8 Johns. 552, was decided upon the distinction, which obtains between an instrument delivered as the deed of the grantor, and one delivered as an escrow. 3 Co. Lit., n. 223.

Again, who could sue for an injury to the estate between the sale and the execution of the deed? I apprehend the purchaser, only. *Heath* v. *Ross*, 12 Johns. 140. A disseizee, after re-entry, may maintain trespass against the disseizor; for it is assumed he has never been out of possession. 2 Rolle's Abr., Trespass T, *pl. 5.* 4 Cow. 329. 8 Cow. 220. The action of trespass for *mesne* profits is founded on the principle of possession by relation of the re-entry. *Dewey* v. *Osborn,* 4 Cow. 338. In this state, the bargainee, *before entry*, may maintain trespass against a stranger, unless there is an adverse possession. 2 Aik. 364. The sale determined the right of the administrator to the possession; and the vendors became entitled to the rents and profits. In the absence of any proof, the presumption is, that Mills Purdy held in subordination to the title

of the defendants. And as there was no evidence that he occupied under an instrument in writing signed by the grantors, his possession was that of a tenant at will,—which the law adjudges to be the possession of the defendants. Rev. St. 314, § 21. *Starr* v. *Jackson*, 11 Mass. 518. 15 Pick. 102. *Catlin* v. *Hayden*, 1 Vt. 375. *Aldis* v. *Burdick*, 8 Vt. 21.

The opinion of the court was delivered by

Bennett, J. The question submitted to us upon this bill of exceptions is, whether the present defendants are liable for the wrongful act of Mills Purdy and the administrator of William Purdy, in the erection of the dam in question, in June, 1844, by reason of which the plaintiff has been damnified. It appears, that the defendants did not in fact take the title to the premises, upon which the dam was erected, until after the erection of the dam. Though the sale by the administrator was in June, 1843, yet the deed to the defendants was not in point of fact executed until February, 1845. The defendants, the case finds, never had any possession of the premises, or control over them ; but the dam and the premises remained in the *exclusive* possession of Mills Purdy, during the summer and autumn of 1844, until December, when he left the possession. The case also finds, that the defendants knew nothing of the erection of the dam, or of the rise of the water occasioned thereby. In January, 1845, the dam was swept away, and was not erected again, until after the defendants had deeded to Betsey Purdy, in the spring of 1845.

The plaintiff assumes, in argument, that the title of the defendants has relation back to the time of sale by the administrator ; and then infers, that the defendants are personally liable for the wrongful act of Mills Purdy and the administrator, in the erection of the dam complained of. The doctrine of *relation* has been argued with ability, and a very commendable research ; and, as one of the members of this court, I think it may well be maintained, as a general principle, that where there are divers acts concurrent to make a conveyance of an estate, the original act shall be preferred, and to this the other acts shall have *relation ;* though doubtless the rule is so modified, that this relation by fiction is not to have place, where its introduction will prejudice the rights of third persons, who are

Pettibone *v.* Burton et al.

neither parties or privies to the conveyance. We do not find it ne-
cessary to decide, whether, in this particular case, the doctrine *of
relation* is to have place, so as to refer the taking of the deed by the
defendants back to the time of the purchase at the administrator's
sale, or not.

It is sufficient, for this case, to hold, that if it be so, it does not
follow, that the defendants are liable in this action. A third person
cannot be liable for the wrongful act of another, unless in fact, or
in contemplation of law, he is *privy*, or in some way consenting to
it. The case itself precludes the idea, that the defendants were in
any way privy to the wrong complained of, in point of fact, or in any
way assenting to it. They had no knowledge, that a wrong had
been committed by any one. The question, then, arises, are the
defendants *privy in law* to the wrong committed, by reason of any
relation between them and the wrong doers? If the owner of land,
upon which a nuisance has already been erected, lets the land to
another, an action for its continuance may be brought, either against
the landlord, or the tenant. W. & G. on Easements, p. 296. If,
however, the nuisance is erected during the tenancy, the landlord is
not liable. The case of *Cheetham* v. *Thompson*, 4 T. R. 318, es-
tablishes this distinction.

. The dam was erected by Mills Purdy, in June, 1844, who was
then in possession of the premises; and if the relation of landlord
and tenant ever existed between him and the defendants, it did then
exist. But we think no such tenancy ever existed between them,
as to render the defendants liable for the continuance of the dam, al-
though the erection had been prior to the administrator's sale, and
although the deed to the defendants should also have relation back
to the time of sale. Mills Purdy never recognized the defendants as
his landlords, and never paid them any rent, and they never claimed
any of him. Besides, the case finds, that he had the sole and *exclu-
sive* possession. In the case of *Nichols* v. *Williams*, 8 Cow. 13, to
which we have been referred to show that a tenancy existed between
the defendants and Mills Purdy, the debtor, who remained in the
possession after the sheriff's sale of the premises, in fact paid rent;
and it was held, for that reason, that he was tenant at will. All
that can be said in this case is, that the defendants, after the sale,
permitted Purdy to remain in possession, the latter paying no rent,

and the former requiring none to be paid. At most, he could be regarded only *quasi tenant at will*, and the defendants might at any time have had their action of ejectment against him. 1 Johns. Cas. 153. 1 Johns. 44. We think, then, no such tenancy is established, as, in any event, to constitute the defendants *privies in law* to the wrongful erection of the dam by Mills Purdy, so as to make them liable for his act.

It has been said, that the defendants were liable for the continuance of the dam after the abandonment of the possession by Mills Purdy; but clearly they could not be, without notice of the existence of the nuisance, or a request to abate it.

The result is, the judgment of the county court is reversed, and the cause remanded.