VICTORIA CAPELLA, ETC., ET AL., Plaintiffs and Appellees-Appellants, *v.* FRANCISCO CARRERAS MÁRQUEZ ET AL., Defendants and Appellants-Appellees.

Nos. 8002 and 8004. Argued April 5, 1940.—Decided July 9, 1940.

*Estrella García Capella* and *C. Coll Cuchí* for appellees-appellants.
*R. Cuevas Zequeira* for appellants-appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action to abate a nuisance (*perturbación, menoscabo y voluntaria violación del derecho de propiedad*) and for damages in which judgment was rendered against the defendants. The allegations of the parties, the evidence adduced by the plaintiffs and the scope thereof, and the legal questions involved together with the views of this court on the same are set forth in the opinion delivered by Mr. Justice Córdova Dávila which formed the basis of the judgment of

this court reversing the one rendered by the district court and remanding the case for further proceedings. *Capella* v. *Carreras,* 48 P.R.R. 811.

Both parties appealed from the second judgment whereby the defendants were adjudged to pay $8,000 damages together with costs, expenses, and attorney's fees. The plaintiffs asked the court to reconsider and amend the dispositive part of the judgment, and the court, by an order of February 24, 1936, refused to do so. Thereupon that party appealed from the pronouncement of the judgment fixing the damages at $8,000 on the ground that a larger amount had been proved, and from the order of February 24, 1936. The defendants likewise requested a reconsideration which was refused by the same order of February 24, 1936, and they appealed to this court. We will consider both appeals in a single opinion herein, taking up first the appeal filed by the defendants, and we will decide the controversy by a single judgment.

The defendants in their brief have assigned six errors as committed by the trial court, (1) in finally applying to the case the doctrine laid down in 48 P.R.R. 811, without asserting the existence of the street which is alleged to have been obstructed; (2) in overruling the defenses of *res judicata* and prescription; (3) in fixing the damages at $8,000; (4) in rendering judgment severally against all the defendants; (5) in imposing costs, disbursements, and attorney's fees on the said defendants; and (6) in denying the motion for reconsideration.

██ Let us examine the first assignment of error. For this purpose it would seem advisable to transcribe, from the statement of facts and opinion of the trial court, the following:

"When we decided this case on or about April 14, 1932, we had in mind the fact that an action to abate a nuisance can not be maintained except by the party who is actually in possession of the disturbed thing, and as a street was involved, we thought that the municipality was the only entity really interested in the free use and

enjoyment of the same. We likewise thought that, as the street was not being taken care of by the municipality, any obstruction which might be placed by a neighbor therein and which might disturb the free use and enjoyment of a property, gave no right of action; and so, we sustained a motion for nonsuit presented by the defendants. The Supreme Court reversed our decision in 48 P.R.R. 811, and in the opinion it is held that once an improvement project is laid out by dividing the parcels of land into lots and streets, the owners of the lots acquire the right to use the streets laid out, and if any one obstructs the use and enjoyment of the property, a cause of action arises in their favor; and likewise it is held that the owners of said lots are entitled to avail themselves of the streets dedicated to public use and to demand the removal of any nuisance or disturbance that might impair such right. The Supreme Court directed that the case be remanded to us for further proceedings and we reset it for trial, which was held on November 1 of the present year.

"The defendants introduced their documentary and testimonial evidence, . . . .

"The testimonial evidence of the defendants is in substance as follows: Francisco Carreras contracted marriage, in 1922, with Doña Rosa Lluberas and since that time lived in Miramar, in the house which adjoins that of the plaintiffs; he was acquainted with the latter and knew that there was a controversy regarding a fence that existed in the yard of the house; that said fence already existed at the time of his marriage and stood there for eight or eleven years; that the said fence did not obstruct the street, and that his wife attempted to purchase from the plaintiffs the latter's property but that there was no agreement on the price; and that according to his best recollection the fence existed since 1916 or 1917; that there was a narrow road over which the plaintiffs passed, which was a public road.

"Etienne Totti is an engineer; he knew the land and knew the house of Mrs. Lluberas; he had recently been on the place; he had seen no sidewalks or asphalted streets, and that a street could be constructed in that place but a considerable investment would be required.

"Julio Montilla has been an engineer of the Government of the Capital for over eleven years; he makes studies and projects for streets; he knew the place on which the house of Mrs. Lluberas stood; he stated that the fence which formerly stood there no longer existed and that no street had been constructed there; that some time ago

he went to make a study for the proposed street, but that the fence which existed there interrupted the course of his work.

"Miss Estrella García Capella, one of the plaintiffs herein, stated that at present there is no fence there because it was removed in June 1935 or 1934, by order of Arturo Lluberas.

" . . . . As regards the documentary evidence, the defendants introduced the record of the suit in case No. 4306 of this court, between the same parties herein except that in the former Arturo Lluberas did not appear as defendant . . . "

The judge then referred to the result of the first view of the premises taken in 1931, he described the place as it appeared in 1935, and went on to say:

"The conditions of the premises, as viewed by the court, are entirely different from those which existed on November 21, 1931, and this new situation has been created by the removal of the fence which projected itself and narrowed the space, now open, which the court can identify as being the same, not only because of the recollection it has of the premises, but also because of the trees to which it has already referred and the lamppost and lamp which are in the same place."

He continued his reasoning and concluded by saying:

"The defenses set up by the defendants having been overruled, and the evidence introduced by the latter having been analyzed, the same does not controvert that of the plaintiffs, according to the analysis thereof made in the opinion of the Supreme Court to which we referred above. That opinion of the Supreme Court is the law of the case; and we must abide by it. The evidence adduced by the plaintiffs, says the Supreme Court, tends to establish *prima facie* the existence of a nuisance maintained by the defendant Mrs. Lluberas. The evidence introduced by the defendants does not, in our judgment, overcome the former, but rather tends to strengthen it. The defense of lack of facts sufficient to constitute a cause of action, which is relied on in addition to the one under discussion, has also been decided by the Supreme Court, when laying down the doctrine that the purchasers of a lot forming part of an urban real estate development are entitled to use the streets dedicated to the public use and to demand the removal of any disturbance or obstruction impairing such right."

The statements of the trial judge regarding the proceedings had are correct. Similarly as to his reasoning and the weighing of the evidence.

It is insisted that the district court went beyond the point indicated by this Supreme Court in the final paragraph of its opinion of July 11, 1935, to wit:

"It is not incumbent on us to give an opinion at this time as to the weight that such evidence deserves. We are deciding a motion addressed to the sufficiency of the evidence adduced, which motion, in American legal terminology, is known as a motion for nonsuit. We simply consider this evidence in order to determine whether or not the plaintiffs have made out a prima facie case, and this question is answered by us in the affirmative, because we think that the evidence is sufficient for a determination of the case on the merits, after the defendants have had an opportunity to produce their evidence and establish their defenses.

"The judgment appealed from must be reversed and the case remanded to the court below for further proceedings not inconsistent with this opinion." *Capella* v. *Carreras,* 48 P.R.R. 811, 825.

We do not agree. As we have seen, the district judge began by stating the reasons which he had in 1932 for granting the motion for nonsuit. None of them makes reference to any disposition on his part not to believe the evidence of the plaintiffs. The opinion of this Supreme Court of July 11, 1935, contained a full statement and analysis of the evidence of said plaintiffs and set forth the conclusions reached showing that a *prima facie* case had been made out by them. The case was remanded to the lower court and the defendants were given an opportunity to introduce their evidence, which they did. The trial court, in its statement of the case and opinion, refers to that evidence and concludes that the same does not controvert but rather strengthens that of the plaintiffs. And following the viewpoint of the Supreme Court, as it was proper to do, it rendered judgment for the plaintiffs.

The district court gave credit to the witnesses of the plaintiffs, not because it felt bound to do so by reason of the

judgment of this Supreme Court. It gave them credit of its own accord, just as it did in 1932 in deciding the motion for nonsuit. If it then decided the case against the plaintiffs it was not because it did not give any credit to their witnesses, but because it considered that their testimony failed to establish a *prima facie* case for the reasons which it stated at the beginning of its opinion three years afterwards.

In order that a street may exist, with the right to the use thereof by the purchasers of lots according to an improvement project in whose plan it is drawn, it being actually laid out on the ground for the free use of such purchasers and the public, it is not necessary that said street should be paved or asphalted or that it should have sidewalks, gutters, and a sanitary system.

If the street exists on the ground, that is. if there is sufficient unoccupied land therefor, it may not be fenced or obstructed at the will of another purchaser, as happened in this case, without incurring in the corresponding liability for any damages caused by his action.

██ The first error assigned was not, therefore, committed. Nor was the second committed either. After referring to the introduction by the defendants of the record of the suit in order to establish the defenses of *res judicata* and prescription, the court said:

"A brief analysis of the suit in case No. 4306 is as follows: It was also an action to abate a nuisance and for damages; it was filed on June 14, 1927, and after various incidents, an order was made by this court on June 29, 1929, denying a motion of the plaintiffs for a continuance, and sustaining a motion of the defendants to dismiss the complaint for want of prosecution; on the same date a judgment was entered dismissing the action, without special imposition of costs; from this judgment the plaintiff appealed, and the Supreme Court, on February 3, 1930, rendered a decision dismissing the appeal, with prejudice.

"It is not necessary to go any further in order to determine that said judgment does not constitute *res judicata* and that nothing precluded the plaintiffs from instituting on January 25, 1930, the

suit which we are now deciding. The defense of prescription can not be sustained either, inasmuch as at the time the said suit was commenced the obstruction or disturbance giving rise to the cause of action still existed."

The district court is right. The judgment which is claimed to have settled this controversy was rendered on the ground of want of prosecution. It did not decide the case on the merits. Nor was the dismissal of the appeal taken therefrom a decision on the merits. It therefore does not have the force of *res judicata.*

The appellants themselves, in their brief, say:

"We do not lose sight of the fact that the decisions of the American courts tend to establish the principle that a judgment which is not rendered on the merits of the case can not serve as a basis for the defense of *res judicata.* However, if the applicable decisions are examined, it will be found that in almost all cases where such a conclusion was reached the original judgment was rendered saving the right of the plaintiff to bring a new action, the trial courts using the expression "without prejudice"; from which it may be inferred that where no specific grant of leave to file a new action exists, or where the original judgment has been rendered *with prejudice,* said judgment constitutes a bar to a new suit."

The last inference is not justified. No right is granted or taken away by the court as a result of the insertion or omission of the words "without prejudice." The same arises from the very nature of the judgment. It would not be just to give the force of *res judicata* to a judgment which was not an adjudication on the merits. As to the words "with prejudice," when used, they can only have their own scope, as, for example, the payment of costs, expiration of the limitation period, etc., and can never serve to increase the effect of the judgment by making it appear as a decision on the merits when the judgment itself says that it is not such a decision.

Nor may the former suit be successfully invoked in order to establish that when the second suit was instituted the cause of action had already prescribed, since there are

involved damages caused by continuous acts which subsist until the cause producing them has ceased. It may well be said that in such a case the injurious act is renewed from day to day, from hour to hour, from minute to minute, and from second to second. What has been said disposes also of the last part of the brief of the defendants-appellants in which it is maintained that the complaint does not state a cause of action, as it appears that the action brought therein was barred after the lapse of one year.

■ The third assignment of error relating to the damages will be considered jointly with the only assignment made in the brief which was submitted by the plaintiffs in support of their appeal.

By the fourth assignment of error it is maintained that the court had no power to adjudge Arturo Lluberas, a purchaser of the lot, to pay any damages caused by the wrongful act of the seller Rosa Lluberas, nor to render judgment against the heirs of the latter.

A careful examination of the title deeds shows that the defendant Arturo Lluberas, owner of the lot whose western boundary was fenced so as to include the street within the lot, sold the latter to his sister, Rosa, and later repurchased it from her. At the time the lot was purchased by said defendant, the same abutted on Palma Avenue, and that boundary was changed when the lot was sold to the sister: a change which tends to support the disturbance. The whole record shows that the defendant Lluberas when purchasing the lot was aware of the act committed by his sister. The plaintiffs requested him by letter to remove the fence. He not only failed to do so, but in answering the complaint he denied that any fence had been erected on Palma Avenue or that the passage on any public highway had been obstructed, and further denied the existence of the street at the place on which the fence stood, whereas the evidence

showed on the contrary that what was actually a street had been knowingly fenced in as a part of the lot.

In the case of *Fuller* v. *Andrews,* 230 Mass. 139, 146, damages were claimed for a death resulting from the collapse of a pier which was alleged to be a public nuisance by reason of its extending into tidewater without any license therefor, and which had been transferred to the defendant upon being abandoned by the person who built it, and it was held that the defendant was liable even though no demand had been made upon him to abate the nuisance. In the course of its opinion, the court said:

"One who is not responsible for the creation of a private nuisance cannot be held liable for its subsequent maintenance merely because he has become the owner of it. It is the general rule that he must have notice to abate it, or knowledge that it is a nuisance and injurious to others, before he can be held liable for it. (Citations.) But this is not the governing principle as to the maintenance of public nuisances. Ordinarily liability arises for maintaining structures which constitute or cause a public nuisance, whether built by the person charged or by some predecessor in title. This rule is well established, and the distinction between private and public nuisances as to the requirement of notice to abate is thoroughly imbedded in our jurisprudence."

As an obstruction of a public street is involved, the nuisance herein is a public nuisance; but even if it were considered as a private nuisance in view of the origin and the nature of the claim, the evidence shows that the defendant had knowledge of its existence from the beginning, and that demand was made upon him to abate the nuisance, which he did not remove until after the judgment of this Supreme Court was rendered in 1935.

Regarding the other defendants, that is, the Ortiz Lluberas heirs, all that is said in the brief of the defendants-appellants is as follows:

"The infants Ortiz Lluberas, in so far as the judgment is concerned, have suffered the same fate as Don Arturo Lluberas. We therefore invoke the same reasoning above set forth.

" 'Inheriters of a public nuisance are not liable in the absence of evidence showing any act of theirs in relation to or connection therewith.' *Bruce* v. *State*, 87 Ind. 450.'

" 'The heirs or personal representatives of the originator of a nuisance are not liable for damages resulting from its continuance after his death, except on neglect to abate it after notice.' *Sloggy* v. *Dilworth*, 38 Minn. 179, 36 N. W. 451, 8 Am. S. R. 656.''

The citations are inapplicable, as here the heirs are not sued as having maintained the nuisance. After the action against their predecessor in interest had been commenced, the latter died during the pendency of the action and the heirs were made parties thereto as successors of the personality of their ancestor. They accepted the inheritance with knowledge of the existence of the claim and they are clearly responsible under the judgment determining the same.

Regarding the award and amount of damages, the district judge in his opinion said:

"Upon a further examination of the evidence of the plaintiffs, we re-affirm our former conclusion that they have really suffered detriment in the enjoyment of their property by reason of the fence erected at that place; but we do not think that such a detriment would justify an award of $49,425, as demanded by the plaintiffs in their complaint, or of $79,000, to which their claim has been increased after the introduction of their evidence regarding the damages.''

And in his judgment he held that he should adjudge, as he did adjudge, "the defendants, jointly and severally, to pay the sum of $8,000, as damages, which the court considers as a just and reasonable indemnity for the disturbance which the plaintiffs have suffered in the enjoyment of their property up to the time of the removal of the fence that had been erected by the predecessor in interest of the defendant heirs, Doña Rosa Lluberas. . . .''

The plaintiffs and appellants, in the short brief submitted by them in support of their appeal, mention their witnesses and the pages on which the testimony of the latter appear in the transcript, and say:

"We do not think it necessary for us to transcribe in this brief the testimony of these witnesses, as that would have the effect of extending the brief beyond its proper limits.

"Really in this appeal the question involved is not one of fact but of law. We simply raise it before the court for its determination, thus:

"The plaintiffs having established by direct and relevant evidence the amount of the damages sustained by each of them, as the same were specifically alleged, and no evidence having been introduced by the defendants which would tend to controvert those damages or to reduce them, could the district court make a discretionary estimate thereof, without being bound by the proof made? In our judgment, the district court lacks such discretionary power in a case of this character."

We do not agree. It is incumbent on the trial judge to pass upon the credibility of the witnesses. In a case like the present, where there is involved the estimates placed by the witnesses upon the value of properties, repairs, rents and profits, physical and mental suffering, interruption of business, etc., the judge may give credit to the witnesses in a general way (*en principio*), without being bound by their testimony in its entirety. By using his own judgment, and with the purpose of acting fairly towards all the interests involved, he may reduce the effect of said testimony to such limits as he may deem to be more in harmony with the actual facts.

Experience has shown that in claims for damages the witnesses have a tendency to exaggerate, but the judge is not bound to accept such exaggerations as correct. Otherwise, if the judge could not reduce to its just limits the estimates given by the witness, he would be compelled to discard their entire testimony, which would be contrary to the very interests of the cause in support of which such witnesses testified.

In order that the appellate court may be inclined to substitute its own estimate for that of the trial judge, it must be shown that the latter, in reducing the amount, disregarded accurate data submitted to him, or that he failed to take into

account self-evident circumstances—in a word, that he committed an abuse of discretion, which has not been shown in the present case. Plaintiffs' appeal is therefore not well founded.

■ The defendants in their motion for reconsideration urged that ''as what is involved is an action to abate a nuisance and for damages, based on section 1803 of the Revised Civil Code, the plaintiffs could only recover such damages as they suffered within the year next preceding the filing of the complaint, in accordance with subdivision 2, section 1869 of the said code. *Colls* v. *Municipality of Lares*, 23 P.R.R. 805.''

The decision invoked does not support the contention of the appellants in connection with the facts of the present case. In that decision it was held, to quote from the syllabus, that—

''Under sections 1869 and 1803 of the Revised Civil Code, an action against a municipality for damages arising from the construction of an alleged nuisance, consisting of a sewer, retaining wall and embankment built in order to open and grade a street, prescribes in one year in the absence of proof of damages resulting from the continuing nuisance.'' *Colls* v. *Municipality of Lares*, 23 P.R.R. 805.

Here the damages claimed arose not only from the construction of the fence which blocked the street, but also from the maintenance of the fence, which practically ruined the property of the plaintiffs. As we have already said, there is involved a continuing nuisance.

''The apparent discrepancy in the American cases on this subject may, perhaps, be reduced,'' it is said in Sutherland, 3d ed., vol. 4, p. 3051, ''by supposing that where the nuisance consists of a structure of a permanent nature and intended by the defendant to be so, or of a use or invasion of the plaintiffs property, or a deprivation of some benefit appurtenant to it for an indefinitely long period in the future, the injured party has an option to complain of it as a permanent injury and recover damages for the whole time, estimating

its duration according to the defendant's purpose in creating or continuing it; or to treat it as a temporary wrong to be compensated· for while it continues, that is, until the act complained of becomes rightful by grant, condemnation of property or ceases by abatement.''

The fixing of the amount of recovery is not discussed in detail in the brief of the defendants. No analysis is made of the evidence regarding the same. Apart from the questions of law raised, nothing is said as to why the judge erred in fixing the amount at $8,000. That being so, and as unaided we have failed to find that any essential error has been committed by the court, we must accept its estimate as a just and proper one.

There only remains to be considered the assignment relating to the imposition of costs on the defendants. In our judgment, the error is nonexistent. An examination of the suit from its beginning, of all that was said by this court in its former opinion, in short, of the entire record, shows that the payment of the costs and attorney's fees was imposed in accordance with the facts and the law, the trial court making a proper use of its discretion. There was no error.

Therefore, the judgment appealed from must be affirmed in all its parts.