ANTONE LENARI & another *vs.* TOWN OF KINGSTON.

Plymouth. March 8, 1961. — June 7, 1961.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Dump. Nuisance. Municipal Corporations,* Public dump. *Equity Plead-
ing and Practice,* Rehearing.

Smoke, odors, flies, rodents, and wild dogs coming from a dump owned
and operated by a municipality onto property of another could be found
to constitute a nuisance. [709]

Where a master's report in a suit in equity to enjoin a town from oper-
ating its dump so as to constitute a nuisance and for damages did not
contain findings showing whether alleged offensive conditions of the
dump continued to exist at the time the suit was commenced or whether
the town had used reasonable means to abate them, and, with respect
to the outbreak of fires on the plaintiffs' property the master's sub-
sidiary findings appeared to be either inconsistent with, or insufficient
to support, his conclusions that there was "no credible evidence" that a
fire which had burned a building on the plaintiffs' property "was caused
by burning embers from the dump" and that the fire was not "caused
by the operation of the town dump," a final decree dismissing the bill

was reversed and the case was remanded to the Superior Court for rehearing before the court or before a master.   [709-710]

BILL IN EQUITY, filed in the Superior Court on May 5, 1959. The suit was heard by *Cahill, J.,* on the report of a master.

*Thomas F. Quinn,* for the plaintiffs.

*Philip S. Cronin,* for the defendant.

SPIEGEL, J.   This is a bill in equity to enjoin the town of Kingston from operating its dump so as to constitute a nuisance, a menace to health and property and a trespass, and to assess damages.   The case was referred to a master.

A summary of the material facts found by the master follows.   The plaintiffs own a cranberry bog and adjacent land of about sixty-eight acres situated in the southwesterly part of Kingston which they purchased in 1933.   Since their purchase the plaintiffs have developed the area so that it presently consists of ten acres of bog and fifty-eight acres of upland.   The bog acreage is divided into three bogs which the master referred to as the "westerly, middle and easterly bogs."   The plaintiffs purchased a building and situated it on the southern end of a dike separating the middle and easterly bogs (see attached sketch).   In April, 1951, the town became the owner of a parcel of land consisting of eleven and one tenth acres lying to the north of the plaintiffs' land.   Prior to the town acquiring ownership of this land, the plaintiffs had no difficulty concerning smoke, odor, dust, fires, rodents, flies or vermin.   After the town acquired ownership of this land the town began the operation of a dump thereon.   This dump was located about nine hundred fifty feet from the plaintiffs' land.   Since the beginning of its operation the dump has spread in the direction of the land of the plaintiffs and on the westerly side of the dump, which is presently inactive, it is immediately adjacent to the boundary line between the plaintiffs' and the defendant's land.   One hundred feet or less separate the south side of the dump and the boundary line.

The usual material brought to a town dump was left at this particular dump.   It has been the practice to bring to

the dump large quantities of tar paper and other inflammables, the burning of which emits heavy dark smoke. Burning of material at the dump is intermittent.

Until the spring of 1958, sewage was not brought to this dump. At that time a depression was created in a certain area on the southerly portion of the land of the town near the boundary line of the plaintiffs' land and sewage was disposed of there.

As a result of the town allowing sewage matter to flow upon the plaintiffs' land, the plaintiffs suffered damage in the amount of $154. The practice of the town of dumping sewage was discontinued shortly after the plaintiffs suffered this damage.

The plaintiffs first started having difficulty in 1957, with the outbreak of fires in the vicinity of the dump. Within a two year period from the spring of 1957, there were several separate fires on the property of the plaintiffs. On March 26, 1959, a "wind was blowing directly from a northeasterly direction from the direction of the dump, toward the plaintiffs' bog" from approximately 6 A.M. to sometime after 11 A.M., and tar paper and shingles were being burned at the dump at approximately 9 A.M. "Shortly after 12:12 P.M., the plaintiff Mr. Lenari left his home. He went to the premises and found the building had been almost completely burned. At that time the wind was blowing from a northeasterly direction from the direction of the dump toward the bogs. The plaintiff noticed a burned area in the immediate area of the building extending from there along the easterly side of the dike located between the easterly and middle bog to a burned area of three square feet of the easterly bog. There was also burning an area extending from the building westerly to the middle bog consisting of approximately one quarter acre." "No embers were present at the bog at that time in the nature of tar paper or shingles." The damages caused by this fire were found to be in the amount of $6,550. The master concluded his report with the statement that, "On the basis of the above facts found, I find that there is no credible evi-

dence to support the contention of the plaintiff that the fire was caused by burning embers from the dump of the defendant. I find that the fire which occurred on March 26, 1959, at the plaintiffs' bog originated at or near the building located thereon. I find that this fire did not result from or was caused by the operation of the town dump by the defendant town of Kingston.''

The plaintiffs excepted to the two ultimate findings of the master that ''there is no credible evidence to support the contention of the plaintiff that the fire was caused by burning embers from the dump of the defendant. . . . I find that this fire did not result from or was caused by the operation of the town dump by the defendant town of Kingston.'' An interlocutory decree overruling the exceptions and confirming the master's report and a final decree dismissing the bill of complaint were entered. The case is here on the plaintiffs' appeal from these decrees.

The plaintiffs are entitled to have the town enjoined from allowing a nuisance to continue if one exists. *Turner* v. *Oxford,* 338 Mass. 286, 289. Smoke, odors, flies, rodents, and wild dogs coming from the defendant's dump onto the property of the plaintiffs may well constitute a nuisance. See *Maynard* v. *Carey Constr. Co.* 302 Mass. 530, 531; *Building Commr. of Medford* v. *C. & H. Co.* 319 Mass. 273, 280; G. L. c. 111, § 150A. The master found that ''Prior to the purchase of the property by the defendant town in 1951 the plaintiffs had no difficulties concerning smoke, odor, dust, fires, rodents, flies, or vermin. . . . Approximately six months after the beginning of the operation of the town dump, there was an increase in the number of rats on the plaintiffs' bogs. These rats undermined the dikes . . . bored holes in the dikes and were eating roots of the vine . . . . Sea gulls came in increasing numbers and brought with them various items such as lobster shells . . . which caused the teeth in the picking machines to be broken. Further difficulty was experienced . . . in the matter of the wild dogs running over the bog, bruising the berries and digging out rat holes, causing injurious effects

·to the bog. Since the operation of the town dump, there has been extensive smoke at the area. When the wind is blowing from a northeasterly direction it causes the smoke to settle in the bog.'' The master, however, did not find whether these offensive conditions continued to exist at the time this bill in equity was brought or whether the defendant used reasonable means to abate them. See *Maynard* v. *Carey Constr. Co.* 302 Mass. 530, 533. These are relevant and vital issues in a bill to enjoin a nuisance. In *Turgeon* v. *Turgeon,* 326 Mass. 384, at page 386, it was said, ''Where the facts on which the rights of the parties depend have not been ascertained at the trial it is within the power of the court, in its discretion and of its own motion, to recommit the cause for retrial.'' We are of opinion that this is such a case.

The subsidiary findings of the master in respect to the outbreak of fires on the plaintiffs' property, particularly the fire of March 26, 1959, appear to be either inconsistent with or insufficient to support his ultimate finding that ''there is no credible evidence to support the contention . . . that the fire was caused by burning embers from the dump of the defendant. . . . I find that this fire did not result from or was caused by the operation of the town dump . . . .''

Because this case is being recommitted for the reasons stated above, the issue of the causation of the fires should be reconsidered at the rehearing and sufficient findings made either to support the ultimate finding or to reach a different conclusion as to the cause of the fires.

Whether the rehearing should be before the court or before a master is for the Superior Court to decide. In the event the latter course is pursued the judge is to determine to what extent the report of the master is to be set aside.

The interlocutory decree is reversed; the final decree is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*