JOHN MACKEY vs. ROOTES MOTORS INCORPORATED
& another.

Norfolk.   January 6, 1965. — February 5, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Agency,* Agent's duty of fidelity, Double employment, Knowledge of
agency. *Equity Pleading and Practice,* Counterclaim, Waiver, Rehear-
ing, Decree, Appeal. *Waiver.*

The plaintiff in a suit in equity, by proceeding to trial without answering
that a counterclaim by the defendant was improper for want of equity,
waived any objection thereto based on that ground. [466–467]
In a suit in equity to recover for services rendered to the defendant by
the plaintiff in a certain year, the plaintiff was not barred from recov-
ery by any violation of law by him with respect to similar services
rendered to the defendant in previous years. [467]
Where the proprietor of a storage establishment paid commissions for
procuring storage of motor vehicles therein to one who was their owner's
agent having the duty of arranging for their storage, liability of the
proprietor to the agent's principal depended on whether the proprietor
knew or should have known of such agency. [468]
Where a decisive issue in a suit in equity was not determined by a master,
there should be further hearing of the suit on that issue although no
motion to recommit to the master was made and no appeal taken from
an interlocutory decree confirming the master's report; and, the correct-
ness of the interlocutory decree being open under G. L. c. 214, § 27,
upon an appeal from the final decree, both decrees were reversed and
the suit was remanded to the trial court for such further hearing by the
court or a master. [468–469]

BILL IN EQUITY filed in the Superior Court on February 20,
1963.

The suit was heard by *Ford, J.,* on a master's report.

*Louis Karp* (*Morris R. Spelfogel* with him) for the plain-
tiff.

*J. Owen Todd* for the defendants.

SPIEGEL, J.   This is a bill in equity to reach and apply
certain motor vehicles owned by Rootes Motors Incorpo-

rated (defendant),[1] in satisfaction of a debt for services rendered in 1962 by the plaintiff according to an account annexed. The defendant in its answer denied the debt and filed a counterclaim alleging that it was overcharged by the plaintiff for certain services and seeking recovery from the plaintiff of the amount of the overcharge. The suit was referred to a master, who concluded that the plaintiff owes $4,342 to the defendant and that the defendant owes $3,589.43 to the plaintiff, and ultimately found for the defendant in the amount of $752.57. The trial judge entered an interlocutory decree overruling the plaintiff's exceptions to the master's report and confirming the report. A final decree was entered for the defendant and the plaintiff appeals.

A summary of the pertinent facts follows. In March, 1955, one Kenneth G. Lewis was employed by the defendant as its "full time" New England regional manager in charge of sales and warehousing. In 1956, the parties "entered into a contractual arrangement for the storage and the making of certain repairs to vehicles owned by the defendant." The defendant consulted with Lewis and relied on his advice and recommendations regarding the location for the warehousing of its vehicles. While thus employed as regional manager for the defendant, Lewis obtained business accounts for the plaintiff. From March, 1959, through April, 1962, Lewis received checks from the plaintiff as "commissions for the storage of motor vehicles belonging to the defendant" and other firms. The defendant was never notified of these payments to Lewis. Lewis "recommended the continued use" of the plaintiff's facilities "for the storage and warehousing of the defendant's vehicles." Under this scheme, Lewis received a total of $4,342 from the plaintiff as secret profits or commissions in connection with the storage of the defendant's vehicles in

---

[1] A temporary injunction was granted below restraining the other defendant, Albert H. Solomon, from disposing of the motor vehicles in his possession which are owned by Rootes Motors Incorporated. Solomon is not involved in this appeal and we do not hereinafter refer to him in this opinion.

1959 and 1960 before his employment with the defendant terminated.

"[T]here was no price increase in the contractual arrangement between the . . . [parties] during the period . . . from 1958 until the contractual arrangement terminated in 1962. . . . [I]n 1959 there was a price reduction in . . . [this] arrangement." "[T]he services rendered by the plaintiff to the defendant . . . were satisfactory during the . . . period of . . . [Lewis's employment with the defendant]." The plaintiff never charged the defendant "as a result of any commission, or sum of money paid by the plaintiff" to Lewis during this period. The charges for services set forth in the plaintiff's account annexed cover a period during which Lewis was no longer employed by the defendant. The plaintiff made no payment to Lewis during this period.

The plaintiff objected to the master's conclusion that "the plaintiff is indebted to . . . [the defendant] in the amount of $4,342" on the ground that the facts do not support that conclusion as a matter of law. On the same ground, the plaintiff objected to the general finding "for the defendant . . . in the amount of $752.57."

1. The plaintiff vaguely raises some doubt regarding the propriety of the defendant's counterclaim. In this connection, we note that Rule 32 of the Superior Court (1954) provides that in equity cases the answer may set up any counterclaim of a legal nature, against any one or more of the parties, arising out of the transaction that is the subject matter of the suit. Inasmuch as recovery on the counterclaim is based on a form of tort (as it is evident from our discussion, *infra*) it is "of a legal nature." See G. L. c. 231, § 1. "The word 'transaction' in . . . [Rule 32] should be construed in a sense 'to effectuate the settlement in one proceeding of controversies so closely connected as appropriately to be combined in one trial in order to prevent duplication of testimony, to avoid unnecessary expense to the parties and to the public, and to expedite the adjudication of suits. . . .' *Potier* v. *A. W. Perry, Inc.* 286

Mass. 602, 608." *Davis & O'Connor Co.* v. *Shell Oil Co.* 311 Mass. 401, 405. *Stubbert* v. *Sergio,* 335 Mass. 91, 93. But, in any event, since no answer based on the ground of want of equity was filed to the counterclaim pursuant to Rule 26 of the Superior Court (1954), we are of opinion that the plaintiff has waived any objection thereto based on that ground. *Potier* v. *A. W. Perry, Inc.* 286 Mass. 602, 609. *Davis & O'Connor Co.* v. *Shell Oil Co. Inc.* 311 Mass. 401, 405.

2. The defendant contends that the plaintiff's violation of G. L. c. 271, § 39,[2] by paying commissions to Lewis precludes the plaintiff from any recovery. It presumably bases its contention on the maxim that equity will not grant relief to one who is guilty of illegal conduct in a matter concerning which he seeks relief. *New York, N. H. & H. R.R.* v. *Pierce Coach Lines, Inc.* 281 Mass. 479, 482. See *Walsh* v. *Atlantic Research Associates, Inc.* 321 Mass. 57, 65–66. However, the illegal conduct of the plaintiff to which the defendant refers does not involve the same matters concerning which the plaintiff seeks relief, namely, services rendered by him in 1962. The services involved in the defendant's averment of illegality were separate and occurred in 1959 and 1960. Therefore, we need not pass on the question whether the plaintiff acted in violation of the criminal statute.

3. The facts show a breach by Lewis of his fiduciary duties to his principal, the defendant. "Unless otherwise agreed, an agent is subject to a duty to his principal to act solely for the benefit of the principal in all matters con-nected with his agency." Restatement 2d: Agency, § 387. See Restatement 2d: Agency, §§ 389, 391; *J. C. Penney Co.*

---

[2] This section provides, in part: "[A]n agent, employee or servant who, being authorized to procure materials, supplies or other articles either by purchase or contract for his principal, employer or master, or to employ service or labor for his principal, employer or master, receives directly or indirectly, for himself or for another, a commission, discount or bonus from the person who makes such sale or contract, or furnishes such materials, sup-plies or other articles, or from a person who renders such service or labor; and any person who gives or offers such an agent, employee or servant such commission, discount or bonus, shall be punished by a fine."

v. *Schulte Real Estate Co.* 292 Mass. 42; *Production Mach. Co.* v. *Howe,* 327 Mass. 372, 377–378. The principal's basis of recovery against the agent where the agent makes a profit in connection with transactions conducted by him on behalf of the principal is the agent's "duty to give such profit to the principal." Restatement 2d: Agency, § 388. Cf. *Raymond* v. *Davies,* 293 Mass. 117.

However, the basis of recovery by the defendant against the plaintiff is quite different. "A person who, without being privileged to do so, intentionally causes or assists an agent to violate a duty to his principal is subject to liability to the principal." Restatement 2d: Agency, § 312. Cf. *Moran* v. *Dunphy,* 177 Mass. 485; *H. C. Girard Co.* v. *Lamoureux,* 227 Mass. 277. So also, "[a] person who, knowing that the other party to a transaction has employed an agent to conduct a transaction for him, employs the agent on his own account in such transaction is subject to liability to the other party, unless he reasonably believes that the other party acquiesces in the double employment." Restatement 2d: Agency, § 313 (1). *Boston* v. *Simmons,* 150 Mass. 461, 466. In applying these principles to the case at bar, we note that nothing in the master's findings indicates that the plaintiff, during the period of his payments to Lewis, knew or should have known that Lewis was the agent of the defendant. A finding of such knowledge is essential to the defendant's counterclaim. See Restatement 2d: Agency, §§ 312, comment b, 313; *Boston* v. *Simmons, supra.* The facts as they appear in the report are consistent with the possibility that Lewis held himself out to the plaintiff as a "middleman" or independent broker who would arrange for the storage of motor vehicles with the plaintiff on a free lance basis, and that the plaintiff paid commissions to Lewis believing these representations and unaware of Lewis's fiduciary relationship with the defendant. On those facts there would be no basis for recovery by the defendant on its counterclaim. Conversely, the counterclaim would be meritorious if knowledge by the plaintiff of Lewis's employment by the defendant during the time the

commissions were paid could be shown.  In either event, a specific finding one way or the other is necessary.

Hence, although no motion was made to recommit the case to the master on the ground that one of the issues raised by the counterclaim had not been passed on, we are of opinion that the case should be retried on that issue. "Where the facts on which the rights of the parties depend have not been ascertained at the trial it is within the power of the court, in its discretion and of its own motion, to recommit the cause for re-trial." *DeVeer* v. *Pierson,* 222 Mass. 167, 175.  *Lenari* v. *Kingston,* 342 Mass. 705, 710. *Lattuca* v. *Cusolito,* 343 Mass. 747, 753.  "Whether the re-hearing should be before the court or before a master is for the Superior Court to decide.  In the event the latter course is pursued, the judge is to determine to what extent the report of the master is to be set aside." *Lenari* v. *Kingston, supra.  Lattuca* v. *Cusolito, supra.*

4.  Although no appeal was taken from the interlocutory decree confirming the master's report, its correctness is open for consideration upon the appeal from the final decree.  G. L. c. 214, § 27.  *Arsenault* v. *Arsenault,* 337 Mass. 189, 193.  Accordingly, the interlocutory decree is reversed; the final decree is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*