King, J.
This is an action initiated by the plaintiffs Fidelity Management & Research Co., Fidelity Management Trust Co., Fidelity Puritan Trust ahd Fidelity Devonshire Trust (collectively “Fidelity”) against defendant Patricia Ostrander (“Ostrander”) alleging four claims arising out of a personal investment Ostrander made during her employment at Fidelity. Count I alleges Ostrander breached her common law fiduciary duty of loyalty to Fidelity; Count II alleges a violation of §80a-17(e)(l) of the Investment Company Act of 1940; Count III alleges violations of §80a-17(j) of the Investment Company Act and 17 CFR§270.17j-i; and Count IV alleges breach of employment contract by Ostrander. This case is currently before the court on plaintiffs’ motion for partial summary judgment on Counts I through III of the amended complaint. Fidelity contends that it is entitled to recover the profits obtained by Ostrander as a result of an investment she made while working for Fidelity. Fidelity argues that Ostrander is estopped from denying her liability because she was convicted in a New York federal district court on July 28, 1992 for criminal violations of Sections 80a-17(e) (accepting unlawful compensation) and 17(j) (failure to report a securities transaction) of the Investment Company Act and on a third count for a violation of Section 1954 of ERISA (receiving a thing of value in connection with a pension plan investment). For the reasons set forth below, partial summary judgment will be granted in favor of Fidelity.[2]
RECUSAL
While working on Fidelity’s summary judgment motion, the court recalled that he and his wife have a Fidelity checking account with Fidelity Brokerage Services, Inc. and IRA funds in three Fidelity mutual funds. None are mutual funds that Ostrander worked for and none would realize any financial benefit from a ruling in favor of the Fidelity entities involved in this case. On November 23, 1993 during a telephone conference with counsel of record, the court notified counsel of the above relationship and answered any questions they had bearing on this subject. The court then gave counsel ten (10) days to submit any objections they might have to the court ruling on the pending summary judgment motion. By letter dated December 2, 1993, counsel for Ostrander requested that the court recuse itself from this case. The court treats the letter as a motion for recusal. For the following reason, the motion for recusal is denied.
“A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where: . .. [he or his spouse] has a financial or other property interest in the subject matter in controversy or is a party to the proceeding, which interest could be substantially affected by the outcome of the proceedings.” Supreme Judicial Court Rule 3:09, Canon 3(C)(1)(c).
The first step a judge must take when dealing with a motion to recuse is to examine his own emotions and conscience regarding his impartiality. Lena v. Commonwealth, 369 Mass. 571, 575 (1976). The court has done this and is satisfied that the above described relationship will not affect the court’s impartiality in deciding the pending summary judgment motion.
The second step a judge must take is to determine whether an objective observer would believe “his impartiality might reasonably be questioned.” Id., quoting Rule 3:09, Canon 3(C)(1). The court concludes that this inquiry also leads to a negative response. The court’s Fidelity checking account and mutual fund investments are each separate legal entities which would not benefit financially by a ruling in favor of the plaintiffs in this case. These investments were made long after Ostrander terminated her employment with Fidelity. Moreover, Ostrander had no relationship with these mutual funds or checking account. On these facts an objective observer would not reasonably question the court’s impartiality.
FACTS
The undisputed facts as presented in the light most favorable to the defendant are as follows:
Ostrander was hired by Fidelity in 1970 as a bond specialist and subsequently worked as a portfolio manager until she left the company in 1987. As a .portfolio- mfnager, Ostrander--was respbnsible for making investment decisions on behalf of certain Fidelity funds and trust accounts. From the mid 1970s through the 1980s, Ostrander invested substantial Fidelity funds in high yield, high risk corporate debt securities (known as “junk bonds”) through Michael Milken (“Milken”), then head of the Research Depart *399 ment of the Fixed Income Group of the now defunct Drexel Burnham Lambert, Inc. (“Drexel”).
The transactions which are the subject of this lawsuit began in 1985. Kohlberg Kravis Roberts & Co. (“KKR”), a New York investment firm, formed SCI Holdings, Inc. (“SCI”) in order to arrange a so-called “leveraged buy-out” of Storer Communications (“Storer”). KKR retained Drexel to help it raise the financing necessary to close the deal, which ultimately included $600 million in 15% coupon bonds, $600 million in zero coupon bonds, $261 million in preferred stock and $5 million in warrants. The warrants were owned by a partnership, SCI Equity Associates, L.P. (“SCI Equity”) with KKR as the general partner. Drexel had sole discretion as to the distribution of these warrants and was the underwriter for the issue of securities.
The Storer deal closed on December 5; 1985. Drexel then resold the SCI warrants to Drexel customers via a partnership created especially for the sale of the SCI warrants, MacPherson Investment Partners (“Mac-Pherson”) .
In December 1985, Ostrander purchased $95 million of the SCI junk bonds from Drexel on behalf of Fidelity funds and trust accounts. In connection with those transactions, Milken offered Ostrander an opportunity to invest personally in SCI warrants in the form of an interest in MacPherson. On January 22, 1986, Ostrander paid $13,200 to acquire an interest in MacPherson under the name of Wishingstone Investments L.P. Ostrander never disclosed this investment to Fidelity. The SCI warrants were not available for sale to the general public. Rather, they were sold to parties involved in the purchase of the securities which generated the funds for the Storer leveraged buy-out. Sixty-five percent of the warrants were sold to Ostrander and other fiduciaries for institutions that purchased securities issued in connection with the Storer leveraged buy-out. The SCI warrant investments turned out to be extremely lucrative. Ostrander received a net profit of $741,486.00 from her investment as reported in her 1988 tax return. The entire net profit, however, was not actually distributed to her. She received $589,560 of the net profit and the remaining $151,926 has been retained by MacPherson to cover any contingent liabilities.
On July 28, 1992, Ostrander was convicted by a New York federal district court jury of (1) accepting unlawful compensation; (2) receiving a thing of value in connection with a pension plan investment, and (3) failure to report a securities transaction. On November 10,1992, she was sentenced to prison for two months on each count to run concurrently and was fined $100,000. On July 19,1993, the Court of Appeals for the Second Circuit affirmed Ostrander’s conviction. United States v. Ostrander, No. 1237 (2d Cir. July 19, 1993). In this action, Fidelity seeks damages, imposition of a constructive trust on all improper profits, and disgorgement of all improperly gained profits or property.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “Acomplete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and.mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
Count I — Breach of Fiduciary Duty
As to Fidelity’s common law breach of fiduciary duty claim, Ostrander is collaterally estopped from relitigat-ing the facts which were proven beyond a reasonable doubt at her criminal trial. Aetna Casualty & Surety Co. v. Niziolek, 395 Mass. 737, 742 (1985). In convicting the defendant of violating Section 80(a) 17(e)(1) of the Investment Company Act of 1940,[3] the federal jury found beyond a reasonable doubt that: Ostrander accepted compensation other than her regular salary from a source other than Fidelity; that she accepted the compensation in connection with the purchase of securities for the Fidelity funds under her control; and, in accepting the compensation, she acted knowingly, willfully and unlawfully.[4]
Collateral estoppel, or issue preclusion, is applicable to the present case as all four criteria for invoking the theory are met.[5] The issues in the federal criminal suit and the breach of fiduciary duty count at issue in this case are virtually identical; the issue of Ostrander’s violation of her fiduciary duty by knowingly accepting unlawful compensation was actually litigated in the criminal suit; the issues adjudicated in the federal trial were necessary to the judgment; and finally, Ostrander, as a criminal defendant, had substantial control over the previous criminal litigation and even testified on her own behalf. Chestnut Hill Development Corp. v. Otis Elevator Co., 739 F.Supp. 692, 697-98 (D.Mass. 1990).
Massachusetts courts have stated that mutuality of parties is not always required and has allowed collateral estoppel to be applied offensively where the fairness standard set forth in Parklane Hosiery v. Shore, 439 U.S. 322, 330-31 (1979), is met. Whitehall Co., Ltd. v. Barletta, 404 Mass. 497, 500-03 (1989). See also Restatement (Second) of Judgments §29 (1982). The circumstances of this case lend themselves easily to a fair application of offensive collateral estoppel: Fidelity, a private litigant, could not possibly have been a party to the criminal action; Ostrander had an *400 obvious incentive to defend herself vigorously in the federal criminal trial under the threat of a prison sentence; there are no judgments in Ostrander’s favor conflicting with the federal securities convictions and finally, the current civil litigation clearly does not afford Ostrander additional procedural protections not available in the criminal prosecution. Parklane Hosiery Co. v. Shore, supra.
The finding of the federal juiy that Ostrander knowingly accepted a gratuity from Milken in connection with the purchase of securities on behalf of Fidelity establishes a breach of Ostrander’s duty of undivided loyalty to Fidelity as a matter of law. Miles v. Aetna Casualty & Surety Co., 412 Mass. 424, 426-27 (1992) (“a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed...”) (citing Montana v. United States, 440 U.S. 147, 153 (1979), and others). Abreach of one’s fiduciary duty of loyalty is defined as “(accepting for herself) from a third person any bonus or commission for any act done by [her] in connection with the administration of a trust.” Restatement (Second) of Trusts §170, comment o. See also Jerlyn Yacht Sales, Inc. v. Roman Yacht Brokerage, 950 F.2d 60, 67 (1st Cir. 1991) (“That an agent breaches his fiduciary duty to his principal by earning a ‘secret profit’ or commission is a rule well established in Massachusetts,” citing Raymond v. Davids, 293 Mass. 117, 119-20 (1936), and Little v. Phipps, 208 Mass. 331, 333-34 (1911)).
Based on the findings underlying her criminal conviction, it is clear that Ms. Ostrander violated the fiduciary duty she owed to Fidelity by accepting compensation in the form of an investment opportunity in return for the investments she made on behalf of Fidelity. Therefore, Fidelity is entitled to summary judgment on Count I of its complaint.[6]
Disgorgement as the Proper Remedy
Since Ostrander breached the fiduciary duty of undivided loyalty she owed to Fidelity, the appropriate remedy is disgorgement of her improper profits. Mackey v. Rootes Motors, Inc., 348 Mass. 464, 468 (1965). “An agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal.” Restatement (Second) of Agency §388. An agent has a duty to pay these profits over to the principal even if, as Ostrander contends, she otherwise has acted with perfect fairness to the principal and violates no duty of loyalty in receiving the amount. Jerlyn Yacht Sales Inc., 950 F.2d at 67, citing Restatement (Second) of Agency §388, comment a. It is of no import whether or not the plaintiffs in this case suffered any measurable monetary damages. Id. The injury to Fidelity is the loss of Ostrander’s undivided loyalty, and disgorgement of profits is the appropriate remedy to prevent conflicts of interest in the future.
Calculation of Damages
Fidelity seeks an order requiring Ostrander to disgorge her entire profit of $741,486. In assessing damages Ostrander argues that: (1) the $100,000.00 fine resulting from her criminal conviction should be deducted from her profit; (2) she should not be required to disgorge the $151,926 in profit retained by MacPherson to cover contingent liabilities; and (3) she should not be required to disgorge the approximately $300,000 she paid in taxes on her profit. Ostrander is not entitled to a credit for the federal criminal fine because to do so would nullify the fine. Likewise the Court rejects Ostrander’s request for a tax credit. The Court has only found one case involving a similar request for a tax credit. In that case the request was denied. Taylor v. Janigan, 230 F.Supp. 858 (D.Mass. 1964), aff'd, 344 F.2d 781, 787 (1st Cir. 1965). This request for relief should be addressed to the taxing authorities after she has disgorged her unlawful profits. The court agrees with Ostrander that she should not be obligated to disgorge the monies retained by MacPherson because she has not actually received those funds. For all the court knows, that retainage may not have any value as a practical matter. Although Ostrander shall not be required to disgorge the funds retained by MacPherson, she shall be required to assign her intt¿cst in that partnership to Fidelity.
ORDER
1. Defendant’s motion for recusal is denied.
2. Partial summary judgment is GRANTED in favor of Fidelity as to Count I of the amended complaint. Counts II and III will be dismissed as duplicative.
3. Within fourteen (14) days of receipt of this order Fidelity shall file a proposed plan for the distribution of the funds to be deposited with the court and of Ostrander’s interest in MacPherson among the Fidelity mutual funds and trust accounts formerly managed by Ostrander.
4. Within 21 days of the date of the order the parties shall submit a proposed form of judgment consistent with the above rulings, and including interest and costs.[7]
5. Within thirty (30) days of the entry of final judgment, Ostrander shall deliver to Fidelity and file with the Court an assignment of her interest in Mac-Pherson to Fidelity.
6. The amount of the monetary judgment including interest, at twelve percent per year from the dates of receipt of the funds, and costs shall be deposited With the Clerk of Court within thirty (30) days of the entry of final judgment unless a timely appeal is filed in which case this order for assignment and deposit will be stayed pending appeal.

 Counts I, II and III all seek the same relief based on different theories grounded mainly on the same underlying facts. Since the court will grant summary judgment as to Count I there is no need to reach the other two counts which will be dismissed as duplicative of Count I.

 Section 80a-17(e)(l) of the Investment Company Act of 1940 provides, in relevant part, that “it shall be unlawful for any. affiliated person [Ostrander] of a registered Investment Company [Fidelity] acting as agent to accept from any source any compensation other than the regular salary or wages from such registered company except in the course of such person’s business as an underwriter or broker.”

 See judge’s charge attached as Exhibit K to Fidelity’s motion for partial summary judgment, at 1360-61. The judge explained to the jury that the government had the burden to prove the following elements:
First, that the defendant was an affiliated person or a registered investment company;
Second, that she acted either as an agent for either the Fidelity Puritan Fund or the Fidelity Equity Income Fund or for any of the other investment companies that the defendant managed;
Third, that she received compensation from a source other than her regular salary or wages from her employer, Fidelity;
Fourth, that the defendant accepted the compensation for the purchases of securities by her registered investment company, that is, by either Fidelity Puritan Fund or Fidelity Equity Income Fund or any of the other investment companies that the defendant managed; and,
Fifth, that the defendant in accepting the compensation described above acted unlawfully, knowingly and willfully.

 Massachusetts law requires that the state court must look to federal law to determine the conclusive effect of a federal court’s judgment. Whitehall Co., Ltd. v. Barletta, 404 Mass. 497, 501 (1989).

 The court has considered Ostrander’s argument that Fidelity should be estopped on equitable grounds from recovery against her because Fidelity’s personnel manual encouraged Ostrander to do what she did. This argument lacks merit. Fidelity’s personnel manual does not even suggest that Fidelity fund managers are entitled to receive secret gratuities in return for a decision to purchase a particular investment.

 In a footnote in its brief, Fidelity suggests that a ruling in its favor on the motion for partial summary judgment might render Count IV moot. If this is the case, a notice of dismissal as to Count IV should be filed so that a final judgment can enter.